IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| VIASAT, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>KIOXIA CORPORATION and KIOXIA AMERICA, INC.,<br><br>    Defendants. | Case No. 6:21-cv-1231 |

**DEFENDANTS' OPPOSED MOTION FOR TRANSFER**

**Contents**

I. Introduction ................................................................................................................4

II. Background ................................................................................................................4

    A. KAI's Knowledgeable Witnesses and Documents Are In the NDCA .....................4

    B. Viasat Is Headquartered In San Diego, California, And Has An NDCA Office .....6

III. This Court Should Transfer This Action to The N.D. Cal. For The Convenience of the Parties .........................................................................................................................8

    A. The Private Interest Factors Favor Transfer ............................................................9

        1. The *Access to Sources of Proof* Factor Favors Transfer .............................9

        2. The *Availability of Compulsory Process* Factor Is Neutral .....................10

        3. The *Convenience of the Witnesses and Parties* Factor Favors Transfer ....11

        4. The *Practical Problems* Factor Favors Transfer ......................................13

    B. The Public Interest Factors Favor Transfer ...........................................................14

        1. The *Court Congestion* Factor Is Neutral ..................................................14

        2. The *Local Interest* Factor Favors Transfer ..............................................15

        3. The *Familiarity with the Law* Factor is Neutral .......................................16

        4. The *Conflict of Laws* Factor is Neutral ....................................................16

IV. Conclusion ...............................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ................................................................................... 9, 10, 15

*In re Adobe*,
   823 F. App'x 929 (Fed. Cir. 2020) ..................................................................................11, 12

*In re Apple, Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ................................................................................... 9, 14, 15

*In re Atlassian Corp. PLC*,
   No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ........................................... 13, 14

*Camatic Proprietary Limited v. Irwin Seating Company*,
   No. 3:16-cv-0795-M 2017 WL 2362029 (N.D. Tex. May 31, 2017) ...................................... 16

*In re EMC Corp.*,
   501 F. Appx. 973 (Fed. Cir. 2013) ......................................................................................... 13

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................................... 9, 11, 14

*In re Google LLC*,
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ........................................... 12, 13

*Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*,
   No. 6:19-CV-00355-ADA, 2020 WL 6136783 (W.D. Tex. Mar. 30, 2020) ........................... 11

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ........................................................................................................ 9, 13

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ....................................................................................... 15, 16

*In re HP Inc.*,
   826 F. App'x. 899 (Fed. Cir. 2020) ....................................................................................... 15

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) ........................................................................................ 11, 16

*Moskowitz Family LLC v. Globus Medical*,
   2020 WL 4577710 (W.D. Tex. July 2, 2020) .................................................................. 10, 11

*In re Pandora Media, LLC*,
    No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)..................................................12

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ..................................................................................................9

*In re Samsung*,
    2 F.4th 1371 (Fed. Cir. 2021) ...................................................................................13, 14, 15

*In re TOA Techs., Inc.*,
    543 F. App'x 1006 (Fed. Cir. 2013) ..................................................................................9, 16

*In re TracFone Wireless, Inc.*,
    852 F. App'x 537 (Fed. Cir. 2021) ........................................................................................12

*Viasat, Inc. v. Western Digital Corp. et al.*,
    Case No. 6:21-cv-01230-ADA, D.I. 1 (W.D. Tex., Nov. 29, 2021).......................................13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*en banc*) ........................................................................... *passim*

*In re Volkswagen AG*,
    371 F.3d 201, 205 (5th Cir. 2004) (*en banc*) ........................................................................12

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-cv-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017)....................................12

*Word to Info, Inc. v. Facebook, Inc.*,
    No. 3:14-CV-4387-K, 2015 WL 13870507 (N.D. Tex. July 23, 2015)..................................15

*In re Zimmer Hldgs., Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010).............................................................................................13

Pursuant to 28 U.S.C. § 1404(a), Defendants Kioxia Corporation and Kioxia America, Inc. ("KAI", collectively with Kioxia Corporation, "Kioxia" or "Defendants") respectfully move to transfer this action to the United States District Court for the Northern District of California ("NDCA") "[f]or the convenience of parties and witnesses."

## I.   INTRODUCTION

This case should be transferred to NDCA. KAI is headquartered in NDCA; Plaintiff Viasat, Inc. ("Viasat") is headquartered in San Diego, California, with an office in NDCA. Viasat accused certain NAND-flash-memory-containing-products of infringing U.S. Patent No. 8,615,700 (the "'700 patent", or the "Asserted Patent"). The technology claimed in the Asserted Patent was not developed in this District, nor were the Accused Products made or designed in this District. Defendants' relevant documents did not originate here, nor are they stored here. And not one relevant witness resides here. The vast majority—if not all—of the U.S.-based sources of proof are in NDCA. Further, while KAI and Viasat have a presence in this District, such presences are completely unrelated to the facts of this case.

## II.   BACKGROUND

### A.   KAI's Knowledgeable Witnesses and Documents Are In the NDCA

Kioxia Corporation is headquartered and incorporated in Japan, and KAI is headquartered and incorporated in California. Dkt. 33 ¶¶ 13-14 (Pl.'s First Am. Compl. for Patent Infringement)). Most of Kioxia Corporation's constituents are in Japan. Exhibit A at ¶ 5 (Decl. of Gary Lin in Supp. of Kioxia Corporation and Kioxia America Inc.'s Mot. to Transfer Venue Under 28 U.S.C. § 1404(a)). KAI's headquarters are located in San Jose, California (*i.e.*, NDCA), and it and its affiliates have a significant presence throughout the San Francisco Bay Area. *Id.* at ¶¶ 5 and 7-10. Kioxia Corporation does not own or lease any property in the State of Texas. *Id.* at ¶ 5. KAI leases one office in Austin, Texas, which hosts a small number of employees who have no

knowledge relevant to the allegations in this litigation that cannot be provided by KAI's witnesses located in the NDCA. Exhibit B at ¶ 7 (Decl. of Paul Suhler in Supp. of Kioxia Corporation and Kioxia America Inc.'s Mot. to Transfer Venue Under 28 U.S.C. § 1404(a)).

Viasat accuses certain "data-storage devices containing flash memory" with error correction code ("ECC") systems, "including flash-based solid-state drives (SSDs)" (the "Accused Products"). Dkt. 33 ¶ 42. More specifically, Viasat alleges that the Accused Products "use a form of proprietary error correction hardware known as Quadruple Swing-By Code or QSBC." Dkt. 33 ¶ 46. Viasat particularly accused the following SSD products of infringing the Asserted Patent: the "FL6 Series; CM6 Series; CM5 Series; PM6 Series; CD Series; XD Series; XG Series; and the BG Series." Dkt. 33 ¶ 46.

None of the individuals responsible for developing the accused functionalities or the Accused Products are located in Texas. KAI's key witnesses with unique and relevant knowledge are primarily located in NDCA. *See* Exhibit A ¶¶ 5-9. Of KAI's 236 employees in San Jose, California, "170 . . . are engineers, [and] seventy . . . carry the title 'Principal Engineer.'" *Id.* at ¶ 9. "[T]he primary role of many of these engineers is directed towards the research and development of a variety of SSD products, including those that Viasat accuses of infringement." *Id.* For instance, Gary Lin and Ashwini Puttaswamy, both Principal Engineers for KAI, actively participated in the development of several of the Accused Products. *Id.* at ¶¶ 6-8. Mr. Lin and Ms. Puttaswamy both "work and live in the San Jose area," and members of their respective teams are likewise located in the San Jose area. *Id.* at ¶¶ 7-8 and 11. Further, "the source code describing the design of ECC functionality for the Accused Products that are located in the United States reside on local computers and servers located in or around San Jose, California." *Id.* ¶ 10.

5

In its complaint, Viasat identified over a third of KAI's Austin employees: Greg Blanchette, Vinh Do, Blake Wellings, Mark Lindholm, Patrick Day, Bory Marsh, and Paul Suhler. *See* Dkt. 33 ¶ 20. However, none of these listed employees, or any of KAI's eighteen Austin employees for that matter, participated in any of the "research, design, or development" of any of the Accused Products. Exhibit B ¶ 7. Only one of them, Paul Suhler, is listed as a "Principal Engineer." *Id.* And Mr. Suhler "ha[s] never done any research, design, or development for any of the Accused Products, and [is] not familiar with QSBC technology." *Id.* at ¶ 6.

### B. Viasat Is Headquartered In San Diego, California, And Has An NDCA Office

"Viasat is . . . based in San Diego, California, and organized under the laws of Delaware." Dkt. 33 ¶ 11. Viasat's corporate headquarters are located in Carlsbad, California in the San Diego area. *See* Dkt. 33 ¶ 11; Exhibit C (Viasat Inc., Annual Report (Form 10-k) (May 28, 2021)); Exhibit D (Viasat Inc., Annual Report (Form 10-k) (May 29, 2020)) (disclosing that Viasat's Carlsbad, California office "consist[s] of approximately 985,000 square feet").

Viasat also has an NDCA office, in San Jose, California. Exhibit E (Careers at Viasat, https://careers.viasat.com/careers/LocationSanJose (last visited May 12, 2022)). Viasat's engineers in the NDCA office work on a long-standing, core technology for Viasat—developing its ground systems infrastructure "designed to carry hundreds of gigabytes of traffic relayed by [its] satellites." *Id.*; Dkt. 33 ¶¶ 27-31. Viasat's NDCA presence is therefore likely relevant to this action because, as Viasat alleges, the Asserted Patent claims applications of its existing satellite communications technology to the flash memory market. *See* Dkt. 33 ¶ 27-33. For example, Gopi Selvarajan, who is located in San Jose and has been a Director of Software Development at Viasat since 2012, is an "[a]rchitect and lead [for] SDN [Software Defined Networking] and SDWAN [Software Defined Wide Area Networking] controller[s]." Exhibit F (Gopi Selvarajan, LINKEDIN, https://www.linkedin.com/ (last visited May 12, 2022)). Like the Asserted Patent, SDN and

6

SDWAN controllers also employ forward error correction ("FEC") to correct errors in transmitted data.  *See* Dkt. 33 ¶¶ 31-35; Exhibit G (Jason Gintert, *How Software Defined Wide Area Networking (SD-WAN) Provides Reliable Voice and Video Services Over the Internet*, IEEE SOFTWARIZATION (March 2018), https://sdn.ieee.org/newsletter/march-2018/how-software-defined-wide-area-networking-sd-wan-provides-reliable-voice-and-video-services-over-the-internet); Exhibit H (*What is a Software-Defined Wide Area Network (SD-WAN)?*, KYNDRYL, https://www.kyndryl.com/in/en/learn/sd-wan (last visited May 12, 2022)).

In comparison to its San Diego headquarters and NDCA office, Viasat's presence in this District is insignificant and irrelevant.  Viasat's Austin office opened in December 2017—nearly a decade after the August 2009 priority date claimed by the Asserted Patent.  *See* Exhibit I (Press Release, Viasat Expands Global Presence with New Offices in the U.S. and the Netherlands (Dec. 14, 2017), https://www.viasat.com/about/newsroom/press-releases/viasat-expands-global-presence-new-offices-us-and-netherlands/); *see also* '700 Patent.  Viasat's presence in Austin is not only minimal, at 30 people, but also not relevant to the allegations in this litigation because it is focused on "satellite services platforms; cloud, infrastructure, and security engineering; and [its] data science group."  *See* Dkt. 33 at ¶ 12; *see also id. and* Exhibit J (Careers at Viasat, https://careers.viasat.com/careers/LocationAustin (last visited May 12, 2022).  Viasat's Midland, Texas presence is exclusively directed towards its internet services, which are not relevant to the issues in dispute in this litigation.  Exhibit K (Midland Viasat Internet Service, https://www.viasatprovider.com/internet/texas/midland-tx (last visited May 12, 2022)).

Accordingly, Defendants are not aware of any relevant Viasat witnesses or documents located in this District.[1]

### III. THIS COURT SHOULD TRANSFER THIS ACTION TO THE NDCA FOR THE CONVENIENCE OF THE PARTIES

Defendants respectfully ask this Court to transfer this action to NDCA pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses." In the Fifth Circuit, a district court considering a motion pursuant to 28 U.S.C. § 1404(a) considers several private and public interest factors. *In re Volkswagen of Am., Inc.* ("*Volkwagen II*"), 545 F.3d 304 (5th Cir. 2008) (*en banc*). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

---

[1] Viasat has two offices in Texas outside this District: one in College Station, and another in Houston. Exhibit L (Viasat Locations, https://www.viasat.com/locations/?location=college-station (last visited May 12, 2022)); *see also* Exhibit M (Viasat Locations, https://www.viasat.com/locations/?location=houston (last visited May 12, 2022)). Viasat's College Station office was established in 2014—after the filing and claimed priority date of the Asserted Patent. Exhibit N (Janie Reuter, New Viasat College Station campus brings employees together in Texas, WE ARE VIASAT (Apr. 18, 2018), https://www.viasat.com/about/newsroom/blog/new-viasat-college-station-campus-brings-employees-together-in-texas/) ("Viasat established its presence in College Station in 2014 when it acquired NetNearU, which designed and managed Wi-Fi network services for customers worldwide."). And its operations "focus[] on the company's managed Wi-Fi services business"—also irrelevant to the facts at issue in this litigation. *See* Exhibit O (Careers at Viasat, https://careers.viasat.com/careers/LocationCollegeStation (last visited May 12, 2022)). Further, Viasat's Houston, Texas location is exclusively directed towards internet services, which are irrelevant to this litigation. Exhibit P (Houston Viasat Internet Service, https://www.viasatprovider.com/internet/mississippi/houston-ms (last visited May 12, 2022)).

8

*Id*. These factors are evaluated based on the situation that existed at the time of filing. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The Court should grant the transfer motion where, as here, "the transferee venue is clearly more convenient." *Id*. at 315.

Venue is proper in NDCA under 28 U.S.C. § 1400(b) because KAI is headquartered in San Jose, California, in NDCA, and Kioxia Corporation is a foreign corporation with contacts in the NDCA. Thus, this case could have been brought in NDCA. *See* Exhibit A ¶ 5. As illustrated below, four of the eight relevant factors favor transfer, and four factors are neutral; no factor weighs against transfer. Thus, Defendants respectfully request that the Court transfer this action to NDCA "[f]or the convenience of parties and witnesses" under 28 U.S.C. § 1404(a).

### A. The Private Interest Factors Favor Transfer

As further discussed below, the private interest factors overwhelmingly favor a transfer from this District to NDCA. Notably, Kioxia Corporation has no owned or leased properties in the State of Texas, while KAI's small office in Austin is not relevant to the allegations of the litigation. Exhibit A ¶ 5. Defendants do have a significant and relevant presence in NDCA—KAI is headquartered in NDCA and is Kioxia Corporation's U.S. subsidiary. *See supra* § II.A. Similarly, Viasat has no relevant presence in this District, but *does* have a significant and relevant presence in NDCA. *See supra* § II.B.

#### 1. The *Access to Sources of Proof* Factor Favors Transfer

"This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence[.]" *In re Apple, Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020) (citing *Volkswagen II*, 545 F.3d at 316-318); *In re TOA Techs., Inc.*, 543 Fed. App'x 1006, 1009 (Fed. Cir. 2013) ("The critical inquiry 'is relative ease of access, not absolute ease of access'" (citing *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013))). "[T]he place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d

9

1338, 1345 (Fed. Cir. 2009); *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding that this factor "weighs significantly in favor of transfer" where defendants' sources of proffer were "likely" located in the transferee venue based on evidence that their primary offices were located in the transferee venue and evidence that the research, design, development, testing, marketing, sales, and pricing of the accused products "would have occurred" in the transferee venue, and no likely sources of proof were in the transferor venue). Here, the center of gravity is most certainly *not* this District, but NDCA. *See supra* § II.A. And the fact that Defendants have not yet identified any relevant third parties in NDCA does not compel a different conclusion, especially in light of the fact that Defendants have not identified any relevant third parties in WDTX either.

Moreover, neither Defendants nor Viasat are likely to have any documents or other sources of proof located in this District, but KAI and Viasat *are* likely to have documents and other sources of proof in NDCA. *See supra* §§ II.A & B. As such, access to sources of proof is easier in NDCA than in this District. Therefore, this factor favors transfer to NDCA. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1254–55 (Fed. Cir. 2010) ("[T]he combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff's chosen forum is an important consideration.").

### 2. The *Availability of Compulsory Process* Factor Is Neutral

For this factor, "[t]he Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Moskowitz Family LLC v. Globus Medical*, 2020 WL 4577710, at *4 (W.D. Tex. July 2, 2020). Here, this factor is neutral because as discussed in Section III.A.1., Defendants have not yet identified any third-party witnesses in either NDCA or WDTX. *See infra* § III.A.1.

### 3. The *Convenience of the Witnesses and Parties* Factor Favors Transfer

The "single most important factor in the transfer analysis" considers the convenience of the relative cost of participation—monetary and personal—for willing witnesses. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021); *Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No. 6:19-CV-00355-ADA, 2020 WL 6136783, at *3 (W.D. Tex. Mar. 30, 2020); *Moskowitz Family LLC*, 2020 WL 4577710, at *4 (citing *Genentech*, 566 F.3d at 1343); *In re Adobe*, 823 F. App'x 929, 931 (Fed. Cir. 2020) (finding that "district court failed to accord proper weight to the convenience of the transferee venue" where the vast majority of party witnesses and non-party witnesses resided in the transferee venue). The Fifth Circuit's 100-mile rule states that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when that distance is more than 100 miles. *Volkswagen II*, 545 F.3d at 317. The Court must consider not only monetary costs, "but also personal costs associated with being away from work, family, and community." *Id*.

This factor overwhelmingly favors transfer to NDCA because the majority of party witnesses are located in or closer to NDCA, rendering the cost of traveling to this District—monetarily and personally—considerably higher than traveling to NDCA. In contrast, Defendants are not aware of any party or nonparty witnesses located in this District or the State of Texas.

As identified in Section II.A. above, KAI's key party witnesses with knowledge about the research, design, and development of the Accused Products reside in NDCA. *See supra*, § II.A.; *see also* Exhibit A ¶¶ 7-11. As the Fifth Circuit recognized, it is an "'obvious conclusion' that it is more convenient for witnesses to testify at home and that '[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be

11

away from their regular employment." *See Volkswagen II*, 545 F.3d at 317 (quoting *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 205 (5th Cir. 2004) (*en banc*)).  Maintaining this action in this District would require these important witnesses to be away from their families and regular employment for days at a time, while conducting trial in NDCA would permit these important witnesses to remain at their homes and their regular places of business while on-call. *See In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021) ("[T]he litigation should be conducted where more witnesses could testify without leaving their homes or their regular places of business.") (citing *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539-40 (Fed. Cir. 2021)).

Indeed, the flight time from NDCA to Waco is at least seven hours.  Exhibit Q (Microsoft Bing Travel – Flights from San Jose to Waco, https://www.bing.com/travel/ (last visited June 24, 2022)).  This travel time for KAI's witnesses weighs in favor of transfer.  *See In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) (for witness convenience, travel "time is a more important metric than distance").  Moreover, "[t]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-cv-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017) (quoting *Volkswagen I*, 371 F.3d at 205).

Further, Viasat has no relevant ties whatsoever to this District, and therefore no witnesses here.  *See supra* § II.B.  Instead, Viasat's witnesses will likely be traveling in from its San Diego headquarters or its NDCA office.  *See Adobe*, 823 F. App'x at 931 (finding this factor weighed in favor of a transfer where plaintiff's "own employees will be coming from outside both districts.").

NDCA is plainly more convenient for Viasat's California witnesses. There are no direct flights from San Jose or San Diego to Waco; the flight time from either location to Waco is at least five hours. *See* Exhibit Q; *see also* Exhibit R (Microsoft Bing Travel – Flights from San Diego to Waco, https://www.bing.com/travel/ (last visited June 24, 2022)). In contrast, flights from San Diego—where the bulk of Viasat's personnel are located—to NDCA are less than two hours. Exhibit S (Microsoft Bing Travel – Flights from San Diego to San Jose, https://www.bing.com/travel/ (last visited June 24, 2022)). Thus, convenience to Viasat's witnesses also weighs in favor of transfer. *See Google*, 2021 WL 4427899, at *4.

NDCA is clearly more convenient than this District and transferring this case to NDCA will greatly reduce this burden of travel on all witnesses compared to retaining this case in this District.

### 4.   The *Practical Problems* Factor Favors Transfer

The final private interest factor encompasses "all other practical problems that make trial of a case easy, expeditious, and inexpensive," that "would have been apparent at the time the suit was filed." *See Volkswagen II*, 545 F.3d at 315; *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021) (citing *In re EMC Corp.*, 501 F. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343, (1960))).

Here, although Viasat has filed another case in this District, that case involves only one other patent—U.S. Patent No. 8,966,347 (the "'347 Patent")—and accuses a completely different product. *See Viasat, Inc. v. Western Digital Corp. et al.*, Case No. 6:21-cv-01230-ADA, D.I. 1 (W.D. Tex., Nov. 29, 2021). It is thus "likely that [Viasat's] cases will result in significantly different discovery, evidence, proceedings, and trial." *In re Samsung*, 2 F.4th 1371, 1379-80 (Fed. Cir. 2021) (quoting *In re Zimmer Hldgs., Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)). Moreover, Defendants understand that Western Digital Corporation and Western Digital Technologies, Inc.

13

(the defendants in a related litigation involving the '347 patent) also intend to seek transfer to NDCA, and so any potential judicial economy arising from this second suit has little weight. *See Atlassian*, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021) ("[C]o-pending suits [filed on the same day] are not to be over-weighed if they are also the subject of motions to transfer."). Finally, both of Viasat's cases before this Court are in their early stages; claim construction has not yet begun, and discovery has yet to be opened. As a result, a prompt transfer will not cause delays in either case. Under these circumstances, this factor is neutral—"the incremental gains in keeping [Viasat's] cases in the Western District of Texas simply are not sufficient to justify overriding the inconvenience to the parties and witnesses." *See Samsung*, 2 F.4th at 1379-80.

### B. The Public Interest Factors Favor Transfer

#### 1. The *Court Congestion* Factor Is Neutral

Under this factor, the Court must evaluate the speed with which a case can come to trial and be resolved. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). The Court's general ability to set a trial schedule is not relevant to this factor. *In re Apple Inc.*, 979 F.3d 1332, 1343-44 (Fed. Cir. 2020). In addition to the time to trial statistics for the transferor and transferee forums, other considerations include the number of cases per judge and the speed and availability of other case dispositions. *See In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021).

This factor is neutral. U.S. District Court statistics for the 12-month period ending December 31, 2021, show that the median and average times to disposition for civil cases in NDCA and this District are comparable for all methods of disposition. *See* Exhibit T (United States District Courts, Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf). Further, this action is in its early stages and this Court has yet to set a trial date. *See* Dkt. 39 at 5

(Scheduling Order). Thus, if transferred to NDCA, this case is likely to reach disposition, by trial or otherwise, as quickly, if not more quickly, than it would in this District.

### 2. The *Local Interest* Factor Favors Transfer

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. It regards the "significant connections between a particular venue *and the events that give rise to a suit*." *Apple*, 979 F.3d at 1345 (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (emphasis added); *Volkswagen II*, 545 F.3d at 318; *In re HP Inc.*, 826 F. App'x. 899, 901 & 903–04 (Fed. Cir. 2020)) (internal quotations omitted, emphasis in original); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015) ("A local interest is demonstrated by a relevant factual connection between the events and the venue."). This factor favors transfer for at least two reasons.

First, there is no connection between this District and Viasat's acts of purported invention. The named inventors of the Asserted Patent are not located in this District. *See* '700 Patent. Although Viasat has an Austin office, it opened in December 2017, years after the Asserted Patent was filed. *See supra* § II.B. Moreover, none of Viasat's current operations in that office have anything to do with the flash memory error-correction technology claimed in the Asserted Patent. *See supra* § II.B. Thus, no acts of invention, conception, or reduction to practice of the purported invention occurred in this District or in Texas more generally. And second, KAI has a significant U.S. presence—including facilities and employees—in NDCA. *See supra* § II.A.

Finally, "[t]he fact that infringement is alleged in the Western District of Texas gives [this District] no more of a local interest than the Northern District of California or any other venue." *See In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). In fact, Viasat admits

15

that the Accused Products are sold nationwide, not just in this District. Dkt. 33 at ¶ 8. Thus, Viasat's allegations of infringement in this District cannot override (or even impinge on) NDCA's significant local interest in deciding local issues of KAI's alleged infringement at home. *See Hoffmann-La Roche*, 587 F.3d at 1338 (concluding that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *In re TOA Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013) (stating that "in cases where there is a significant connection between a particular venue and a suit[,] the sale of a product in the plaintiff's preferred forum should not negate this factor being weighed in favor of transfer"); *Camatic*, 2017 WL 2362029, at *6 ("Although the alleged infringing product has been sold in the [transferor forum], it is also in various other locations around the country, so this does not affect the Court's analysis.").

Thus, where the events underlying KAI's alleged infringements occurred mainly in NDCA and not at all in this District, NDCA has a greater local interest. As such, this factor favors transfer. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319-20 (Fed. Cir. 2021).

### 3.     The *Familiarity with the Law* Factor is Neutral

Viasat alleges only patent claims. Both this District and NDCA are equally capable of construing and applying patent law. *See Camatic Proprietary Limited v. Irwin Seating Company*, No. 3:16-cv-0795-M 2017 WL 2362029, at *7 (N.D. Tex. May 31, 2017). Therefore, the third public interest factor is neutral.

### 4.     The *Conflict of Laws* Factor is Neutral

The final public interest factor considers the avoidance of unnecessary problems of conflicts of law or the application of foreign law. "[F]ederal district courts are of equal jurisdiction, and the national patent system, where all appeals go to the Federal Circuit, eliminates the risk of

16

conflicting circuit precedent." *Camatic*, 2017 WL 2362029, at *7. Therefore, the fourth public interest factor is neutral.

In summary, this Court should transfer this action to NDCA because four of the eight factors weigh in favor of transfer, four are neutral, and not one weighs against transfer, as summarized in the following table:

| Factor | Outcome |
| --- | --- |
| Relative ease of access to sources of proof | Favors Transfer |
| Availability of compulsory process to secure attendance of witnesses | Neutral |
| Cost of attendance of willing witnesses | Strongly Favors Transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Favors Transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest in having local interests decided at home | Favors Transfer |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Avoidance of unnecessary problems of conflict of laws or the application of foreign law | Neutral |

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court transfer this action to the U.S. District Court for the Northern District of California for the convenience of the parties. Pursuant to Local Rule CV-7(g), Defendants also request an oral hearing on this motion.

Dated: August 4, 2022               Respectfully submitted,

*/s/ Robinson Vu*   .
Robinson Vu
Texas State Bar No: 24047046
Telephone: (713) 229-1715
Facsimile: (713) 229-7815
Email: Robinson.Vu@bakerbotts.com

Michael Hawes
Texas State Bar No: 24010761
Telephone: (713) 229-1750
Facsimile: (713) 229-7750
Email: michael.hawes@bakerbotts.com

Michael Silliman
Texas State Bar No: 24093152
Telephone: (713) 229-1464
Facsimile: (713) 229-6164
Email: michael.silliman@bakerbotts.com

Bradley Bowling
Texas State Bar No: 24040555
Telephone: (214) 953-6991
Facsimile: (214) 661-4991
Email: brad.bowling@bakerbotts.com

Spencer Packard
Texas State Bar No: 24125823
Telephone: (713) 229-1888
Facsimile: (713) 229-7788
Email: spencer.packard@bakerbotts.com

**Baker Botts L.L.P.**
910 Louisiana Street
Houston, Texas 77002

**Attorneys for Defendants**
**Kioxia Corporation and Kioxia America, Inc.**

**CERTIFICATE OF CONFERENCE**

On July 29, 2022, counsel for Defendants spoke with counsel for Viasat regarding whether Defendants' motion for transfer would be opposed. On July 29, 2022, counsel for Viasat indicated that it will oppose Defendants' motion for transfer.

>                                      */s/  Robinson Vu*
>                                      Robinson Vu

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served August 4, 2022, with a copy of this document via the Court's CM/ECF system.

>                                      */s/ Robinson Vu*
>                                      Robinson Vu