**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **VIASAT, INC.,** | |
| **Plaintiff,** | |
| **vs.** | **Case No.:  6:21-cv-01231-ADA** |
| **KIOXIA CORPORATION and KIOXIA AMERICA, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | ▬▬▬▬▬▬▬▬ |

**PLAINTIFF VIASAT, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO
EXCLUDE AND/OR STRIKE OPINIONS OF CHRISTOPHER BAKEWELL**

**TABLE OF CONTENTS**

Page

ARGUMENT ...................................................................................................................... 2

I.      Mr. Bakewell Should Be Prohibited From Relying On The e.Digital Patent
        Litigation Settlement License For His Market Approach To An Appropriate
        Royalty ................................................................................................................... 2

        A.      e.Digital And Toshiba's Early-Stage Settlement Is Barred As Prejudicial
                Under Federal Circuit Law ......................................................................... 2

        B.      Mr. Bakewell Should Not Be Allowed To Rely On A License Kioxia
                Failed To Identify As A Comparable License During Fact Discovery .................. 7

CONCLUSION ................................................................................................................... 9

## TABLE OF AUTHORITIES

Page

**Cases**

*Deere & Co. v. Int'l Harvester Co.*,
  710 F.2d 1551 (Fed. Cir. 1983) ............................................................................................... 3

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
  No. 6:08-CV-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) .............................................. 6

*Hanson v. Alpine Valley Ski Area, Inc.*,
  718 F.2d 1075 (Fed. Cir. 1983) ............................................................................................ 3, 4

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ........................................................................................ 2, 3, 4, 5

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017) ...................................................................................... 3, 4, 5

*Tomax AS v. Turbo Drill Indus., Inc.*,
  No. 6:21-CV-00260-ADA, 2023 WL 3171744 (W.D. Tex. Apr. 6, 2023) ................................. 9

To rely on a license in a damages analysis, parties and experts have basic hurdles to clear. For a settlement license, those hurdles include showing that the litigation did not skew the economics such that the ultimate license does not reflect the value of the underlying patent. And for any license, basic rules of disclosure require parties to at least identify potentially comparable licenses in response to appropriate discovery.

Kioxia did neither. The e.Digital license is one of the three licenses on which Kioxia's damages expert, Mr. Christopher Bakewell, relies in low-balling Viasat's damages from infringement. The e.Digital license resulted from a litigation settlement. The settlement did not follow any adjudication of the validity or infringement of the patent. To the contrary, the case settled in its infancy—before discovery and under the threat of Rule 11 sanctions against the patentee. These circumstances plainly distinguish the e.Digital license from the hypothetical negotiation, where infringement and validity are assumed. But Mr. Bakewell ignores these differences. He acknowledges that litigation occurred, but that's it. He then just applied the assumed yearly rate in that settlement agreement to the hypothetical negotiation without any adjustment. The Federal Circuit has counseled against this blind reliance on litigation settlements, and the Court should exclude it.

Kioxia's expert's reliance on the e.Digital license has a second problem: Kioxia's lack of disclosure. Viasat asked Kioxia very early in the litigation to identify comparable licenses. Kioxia used the early stage of the case to beg off responding. It then sat silent and never updated its response until its expert later realized the license was allegedly comparable—even though Kioxia's predecessor (Toshiba Corporation) is a party to the e.Digital license. Mr. Bakewell's epiphany stands in stark contrast to Kioxia's corporate representative on licenses, who effectively said the

1

company knew nothing about the settlement, the patents, or the related litigation. Kioxia chose an ostrich approach during fact discovery, and that choice limits what its experts can later discuss.

Under either rationale, the Court should exclude Kioxia's reliance on the e.Digital license.

## ARGUMENT

**I.      Mr. Bakewell Should Be Prohibited From Relying On The e.Digital Patent Litigation Settlement License For His Market Approach To An Appropriate Royalty**

### A.      e.Digital And Toshiba's Early-Stage Settlement Is Barred As Prejudicial Under Federal Circuit Law

To use a license resolving litigation as a comparable license for damages purposes, an expert should show that the license is "the most reliable license in the record." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) (cleaned up). Even then, the offering party must account for the litigation factors that can skew the settlement negotiation such that the agreement fails to reflect "the economic demand for the claimed technology." *Id.* Kioxia's damages expert Mr. Christopher Bakewell did neither. He bases his royalty analysis on a settlement license (referred to as the e.Digital license) with a cursory discussion of the underlying litigation. He ignores that the license was negotiated under the threat of a Rule 11 sanctions motion and fails to explain why the settlement reflects the value of the licensed inventions, as opposed to nuisance value or to mitigating other risks of litigation. The Court should exclude Kioxia's expert's reliance on the e.Digital license.

The e.Digital license settled patent litigation that e.Digital brought against Toshiba. Ex. 1, e.Digital license. The case effectively started in March 2014 after e.Digital amended its complaint against Toshiba before an answer was filed. Ex. 2, Docket for *e.Digital Corp. v. Toshiba Am. Info. Sys., Inc.*, Dkt. 13. The case lasted only about six months from that point and never got beyond the pleading stage. Toshiba filed its answer in July after motion-to-dismiss briefing. *Id.*, Dkt. 31.

Notably, in September, Toshiba filed a motion for sanctions based on the fact that e.Digital failed to conduct an adequate pre-filing investigation. Ex. 3, Def.'s Mot. for Sanctions. On October 3, 2014, the parties moved for a continuance pending settlement by e.Digital, which was finalized by the end of the month. Ex. 2, Dkt. 42; Ex. 4, Bakewell Report at ¶ 174. That was the extent of the litigation.

Mr. Bakewell relies on three separate licenses in proposing his baseline royalty using the market approach. Ex. 4, Bakewell Report at ¶ 212. Although Viasat does not now challenge the other two, the e.Digital license is different. ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ That is insufficient to demonstrate the economic comparability and admissibility of this license, and the Court should exclude it.

The Federal Circuit takes seriously the problems associated with license agreements resulting from a patent litigation settlement. *LaserDynamics*, 694 F.3d at 77-78; *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557 (Fed. Cir. 1983). Courts are wary that these licenses are often "tainted by the coercive environment of patent litigation." *LaserDynamics*, 694 F.3d at 77-78. Courts permit reliance on these settlement agreements "under certain limited circumstances" where the settlement is "uniquely relevant and reliable." *Id.* To rely on litigation settlements,

3

experts must analyze the circumstances of the litigation at the time settlement was reached and whether or not those are similar to the hypothetical negotiation context. *See Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370-71 (Fed. Cir. 2017).

Mr. Bakewell makes no effort to isolate the economic value of the e.Digital license from the economic drivers associated with the accompanying litigation. First, Mr. Bakewell ignores the specifics of the litigation entirely. Those specifics include a host of non-economic factors that contributed to the settlement. The e.Digital license ended litigation in its nascent stages where discovery had not even begun. As the Federal Circuit explained in *Hanson*, settlement offers "made after the infringement had begun and litigation was threatened or probable . . . should not be considered evidence of an established royalty, since license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation." 718 F.2d at 1078-79 (cleaned up). There had been no showing of either infringement or validity in the e.Digital case, which differs from the hypothetical negotiation framework. *LaserDynamics*, 694 F.3d at 77 (hypothetical negotiation "assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed."). A party fearing loss at the outset may settle for an amount much lower than if they had litigated through infringement and validity decisions and won. *Id.*

██████████████████████████████████████████████████████

████████████████████████████████████ To the contrary, the then-pending Rule 11 sanctions motion suggests that the Defendant in e.Digital had serious doubts about infringement and/or validity. Moreover, The case was far from the advanced-stage litigation context that can render settlement agreements reliable. *See, e.g.*, *Prism Techs.*, 849 F.3d at 1369 (settlement agreements can be "especially probative if reached after the litigation was far enough along that the issue was already well explored and well tested").

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████ ▪

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████

Further, Mr. Bakewell ignores that e.Digital settled the case under threat of Rule 11 sanctions. Sanctions motions can exert hydraulic pressure on parties to settle a case for values incongruous with a hypothetical negotiation. For example, the court in *LaserDynamics* held that the district court had abused its discretion in allowing a settlement agreement into evidence. 694 F.3d at 78. As the court explained, the settling party faced "a severe legal and procedural

---

[1] At most, the case Mr. Bakewell cites stands for the proposition that "a settlement reached after a determination of liability (though subject to appeal) is particularly reliable as evidence of value." *Prism Techs.*, 849 F.3d at 1369. As his cited authority says elsewhere, "[a] patent owner may also accept too little, relative to the patent's value, when it accepts an amount out of a desire to avoid further expenditure of (presumptively unrecoverable) litigation costs." *Id.*

disadvantage given [] numerous harsh sanctions imposed on it by the district court." *Id.* The court said these were "unique coercive circumstances" and the settlement amount "ostensibly reflect[ed] not the value of the claimed invention but the strong desire to avoid further litigation under the circumstances." *Id.*

6

These issues are fatal to the admissibility of the e.Digital license, not just fodder for cross examination. Trial will be short. Even if there were time, a jury is not going to meaningfully understand the impact of a sanctions motion on a litigation settlement, the economic pressures associated with resolving litigation, or the lack of information available to a party before discovery in a lawsuit. *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 1727916, at *3 (E.D. Tex. Apr. 28, 2010) ("admission of these agreements would 'invite a 'mini-trial' on similarities and differences in the facts' between this case and the settled claims"). Given the lack of probative value due to Mr. Bakewell's cursory treatment of the e.Digital litigation, the Court should exclude reference to the license entirely. This minimal probative value is far outweighed by juror confusion and the prejudice to Viasat from a mini-trial regarding the e.Digital litigation.

**B.      Mr. Bakewell Should Not Be Allowed To Rely On A License Kioxia Failed To Identify As A Comparable License During Fact Discovery**

Viasat asked Kioxia to identify comparable licenses in an interrogatory. Kioxia never identified any. Viasat then deposed Kioxia's 30(b)(6) designee on licensing topics, which included comparable licenses. Kioxia's witness effectively disavowed all company knowledge of the produced e.Digital license (and several others). Nonetheless, Kioxia's expert identifies the e.Digital license as comparable and uses it to provide a low-ball estimate of Viasat's damages. Kioxia cannot disavow knowledge of the e.Digital license in fact discovery only to have its expert belatedly discover that it's a comparable license. Kioxia should be stuck with its stonewalling from fact discovery, and the Court should exclude any expert opinions based on the e.Digital license.

Viasat served its first set of interrogatories in October 2022 at the beginning of fact discovery. Interrogatory No. 7 asked Kioxia to "[i]dentify all agreements that You contend are comparable to the hypothetical license resulting from the hypothetical negotiation in this lawsuit or are otherwise relevant to the damages analysis in this case." Ex. 6, Defs.' Resps. to Viasat's

First Set of Interrogs. at 19. Kioxia said that a response would be "premature insofar as the parties have just begun to engage in discovery, and Kioxia has not completed its investigations in this matter." *Id.* at 20. Kioxia supplemented its responses to the first set of interrogatories twice, including at the close of fact discovery. Ex. 7, Defs.' Second Suppl. Resps. to Viasat's First Set of Interrogs. But Kioxia never changed its answer to Interrogatory No. 7. *Id.* at 26-27.

Viasat also requested corporate testimony about Kioxia's "licensing policies and any licenses that (1) refer to or relate to the Accused Products or (2) [Kioxia] contend[s] are comparable to the hypothetical license resulting from the hypothetical negotiation in this lawsuit, including any licenses identified in response to Interrogatory No. 7" and "[a]ny license or agreement resolving litigation involving SSDs or flash memory in which Toshiba or Kioxia were parties." Ex. 8, Viasat's Notice of Rule 30(b)(6) Dep. at 13 (Topics 44 and 46). Kioxia agreed only to provide testimony about Kioxia's "[l]icensing policies, if any, and licenses produced by Kioxia," which included the e.Digital license. Ex. 9, Defs.' Second Suppl. Resps. to Viasat's Notice of Rule 30(b)(6) Dep. at 8.

Yet when asked, Kioxia's corporate representative, Ms. Dalphy, knew next to nothing about the e.Digital license.

███████████████████████████████████████████████████

██████████████████████████████████████

Kioxia's expert, however, had no such doubts about the e.Digital license. *See* Ex. 4, Bakewell Report at ¶ 212 (summarizing opinions); *see also* ¶¶ 174-183. Mr. Bakewell offered the e.Digital settlement agreement as a comparable license, even as Kioxia's corporate representative disavowed knowledge of the settlement. *See id.*

Kioxia should not be permitted to dodge an interrogatory, hide behind a corporate representative with no knowledge of a license, and then surprise Viasat by claiming for the first time in a rebuttal expert report that the license is comparable. *See Tomax AS v. Turbo Drill Indus., Inc.*, No. 6:21-CV-00260-ADA, 2023 WL 3171744, at *2 (W.D. Tex. Apr. 6, 2023). Kioxia chose to hide the ball in fact discovery regarding even identifying licenses that could be comparable, and that choice has consequences. Had Kioxia said that e.Digital was potentially comparable, Viasat could have conducted additional discovery into that license and the circumstances in which it was finalized. Kioxia's silence ensured that there was no follow-up fact discovery regarding the e.Digital license. Viasat's expert, Dr. Mody, reached her opinions regarding the lack of comparability of the e.Digital license in part based on Kioxia's corporate testimony disavowing knowledge. *See* Ex. 11, Mody Report at ¶ 91. And Kioxia's complete silence in response to Viasat's interrogatory created the impression that there were no comparable licenses until after fact discovery ended.

## CONCLUSION

Mr. Bakewell should not be permitted to offer opinions to the jury about the e.Digital license. Ex. 4, Bakewell Report at ¶¶ 174-183, 212. That license arises from a litigation context that is vastly different from the circumstances here, and Mr. Bakewell fails to account for those

9

differences. And these opinions should be stricken because of Kioxia's failure to disclose it as a comparable license during fact discovery.

Dated: January 18, 2024

Respectfully submitted,

*/s/ Meg E. Fasulo*

Melissa R. Smith, State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

J. Scott McBride (*Pro Hac Vice*)
Matthew R. Ford (*Pro Hac Vice*)
Nevin M. Gewertz (*Pro Hac Vice*)
Tulsi E. Gaonkar (*Pro Hac Vice*)
Jessica Bernhardt (*Pro Hac Vice*)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
scott.mcbride@bartlitbeck.com
matthew.ford@bartlitbeck.com
nevin.gewertz@bartlitbeck.com
tulsi.gaonkar@bartlitbeck.com
jessica.bernhardt@bartlitbeck.com

Nosson D. Knobloch (*Pro Hac Vice*)
Meg Fasulo (*Pro Hac Vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
nosson.knobloch@bartlitbeck.com
meg.fasulo@bartlitbeck.com

*Counsel for Plaintiff Viasat, Inc.*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been sent to all counsel of record via electronic mail on January 18, 2024.

*/s/ Melissa R. Smith*

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff met and conferred with counsel for Defendants about the relief sought in this Motion. Counsel for Defendants informed counsel for Plaintiff that Defendants oppose the relief sought in this Motion.

*/s/ Melissa R. Smith*