**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **VIASAT, INC.,** | |
| **Plaintiff,** | |
| **vs.** | **Case No.:  6:21-cv-01231-ADA** |
| **KIOXIA CORPORATION and KIOXIA AMERICA, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | PUBLIC VERSION |

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF
DR. RUSSELL FUERST, DR. NISHA MODY, MR. EDWARD DOLLER, AND
<u>DR. SUNIL KHATRI</u>**

████████████████████████████████████████████████████

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................ 2

       A.    Viasat's Damages Theories............................................................. 2

             1.    Viasat's "License Theory"................................................... 3

             2.    Viasat's "Cost Based Theory" and "Incremental Value Theory".............. 6

       B.    Viasat's Written Description Theory ....................................... 7

III.   LEGAL STANDARD......................................................................................... 7

IV.    ARGUMENT....................................................................................................... 8

       A.    Dr. Fuerst's Opinions Should be Excluded Because They Have No Disclosed
             Methodology and Are Not Tied to the Facts of the Case. ................................ 8

             1.    Dr. Fuerst's First Step—His Opinions Regarding the Technical
                   Comparability of the ██████████—Are Not Tied to the Facts of
                   This Case.......................................................................................... 8

             2.    Dr. Fuerst's Second Step—His Opinions Regarding Apportionment of
                   the ██████████—Are "Plucked Out of Thin Air." ..................... 11

       B.    Mr. Doller's Opinions Should Be Excluded Because He Did Not Account For
             the Incremental Value of the Asserted Claims. .................................... 15

       C.    Dr. Mody's Opinions Should be Excluded in Their Entirely For Their Reliance
             on Unreliable and Irrelevant Opinions of Dr. Fuerst and Mr. Doller. ................. 19

       D.    Dr. Mody's Opinions Based on the ██████████ Should Be Excluded
             Because Dr. Mody Used the Wrong Royalty Base............................................. 19

       E.    Dr. Khatri's Opinions Regarding the '700 Patent's Compliance With the Section
             112 Written Description Requirement Should be Excluded Because They Are
             Based on a Flawed Understanding of That Requirement. ................................... 22

V.     CONCLUSION.................................................................................................. 24

██████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc)..........................................................................22, 24

*Ayoub v. Chubb Lloyds Ins. Co. of Tex.*,
No. EP-13-CA-58, 2014 WL 12489692 (W.D. Tex. Apr. 28, 2014) .......................................7

*BMC Software, Inc. v. Servicenow, Inc.*,
No. 2:14-CV-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) .....................................13

*Brown v. Ill. Cent. R.R. Co.*,
705 F.3d 531 (5th Cir. 2013) ...................................................................................................7

*CloudofChange, LLC v. NCR Corp.*,
No. 6:19-CV-00513-ADA, 2021 WL 12093334 (W.D. Tex. Nov. 9, 2021)...........................13

*Commonwealth Sci. & Indus. Rsch. Organisation v. Buffalo Tech. (USA), Inc.*,
542 F.3d 1363 (Fed. Cir. 2008)........................................................................................22, 23

*Curtis v. M&S Petroleum, Inc.*,
174 F.3d 661 (5th Cir. 1999) ...................................................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579, 589 (1993)..........................................................................................................7

*Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*,
No. 4:06-CV-01191-ERW, 2007 WL 4564196 (E.D. Mo. Dec. 21, 2007)............................23

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)...............................................................................................21

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018)..........................................................................................13, 18

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999)..........................................................................................18, 19

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999).....................................................................................................8

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994).......................................................................................................8

██████████████████████████████████████████████████████

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) ................................................................................8

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)..........................................................8, 10, 13, 14, 15

*Omega Pats., LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ......................................................................15, 16

*Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*,
  No. 6:20-CV-00969-ADA, ECF. No. 228, *Memorandum Opinion & Order* (W.D. Tex. Oct.
  4, 2022) .................................................................................................................11

*SPEX Techs., Inc. v. W. Digit. Corp.*,
  No. SACV 16-01799-JVS, 2023 WL 6922860 (C.D. Cal. Oct. 3, 2023).........................17, 18

**STATUTES**

35 U.S.C. § 112................................................................................................1, 2, 7, 22

**OTHER AUTHORITIES**

37 C.F.R § 1.57(c).....................................................................................................22

Fed. R. Civ. P. 26(b)(4)(C) .......................................................................................11

Fed. R. Evid. 403 .....................................................................................................24

Fed. R. Evid. 702 ..................................................................................................7, 24

MPEP (9th ed. Rev. 7.2022, Feb. 2023) §1302.12 .......................................................22

iv

████████████████████████████████████████████████

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1 to 9) |
| B | VIASAT_FEC_00016700-732 ███████████████████████ ███████████████████████████████ |
| C | Expert Report of Dr. Nisha M. Mody (Excerpts) |
| D | Rule 26(a)(2)(C) Disclosure of Russell Fuerst |
| E | Deposition Transcript of Dr. Russell Fuerst dated December 7, 2023 (Excerpts) |
| F | Deposition Transcript of Mr. Edward Doller dated December 14, 2023 (Excerpts) |
| G | Deposition Transcript of Dr. Marwan Hassoun dated December 8, 2023 (Excerpts) |
| H | Email from Samara Hoose dated December 19, 2023 |
| I | VIASAT_FEC_00016272-284 ███████████████████████ ██████████████████████ |
| J | VIASAT_FEC_00016598-651 ██████████████████████ ████████████████ |
| K | VIASAT_FEC_00016652-665 ████████████████████████ █████████████████████ |
| L | Rebuttal Report of Dr. Sunil Khatri Regarding the Validity of U.S. Patent No. 8,715,700 (Excerpts) |
| M | Deposition Transcript of Dr. Marwan Hassoun dated December 8, 2023 (Excerpts) |
| N | Final Written Decision in IPR2022-01126 (November 20, 2023) |
| O | Deposition Transcript of Dr. Russell Fuerst dated July 19, 2023 |
| P | Expert Report of Edward Doller |

████████████████████████████

| Exhibit | Description |
|---------|-------------|
| Q | U.S. Patent No. 8,615,700 |
| R | U.S. Patent No. 8,705,664 |
| S | U.S. Patent No. 8,930,789 |

## I.    INTRODUCTION

This is a one-patent case involving the assertion of four dependent claims, the independent claims of which have been invalidated.  Plaintiff Viasat, Inc. ("Viasat") seeks ███████ in damages for alleged infringement of those dependent claims.  Because Viasat █████████████████████ ████████ Viasat has gone to extremes to inflate its damages number.  But Viasat's multi-step damages analysis includes several steps that are legally flawed and cannot be presented to a jury. Therefore, Defendants Kioxia Corporation and Kioxia America, Inc. ("Kioxia") respectfully move to exclude testimony and opinions of Viasat's experts Dr. Nisha Mody, Dr. Russell Fuerst, and Mr. Edward Doller as unreliable and inadmissible pursuant to *Daubert* and Fed. R. Evid. 702. Kioxia also moves to exclude the Section 112 written description opinions of Dr. Sunil Khatri under those rules.

Dr. Mody's damages opinions should be excluded in their entirety because they depend on unreliable opinions of Dr. Fuerst and Mr. Doller.  Dr. Fuerst should not be allowed to offer opinions regarding an apportionment plucked from thin air that have no disclosed, much less testable, methodology and are admittedly not tied to the facts of this case.  Mr. Doller's opinions regarding the benefits of the asserted patent also should be excluded due to his failure to account for the incremental value of the asserted claims.  Mr. Doller's analysis does not differentiate between (a) the asserted dependent claims, and (b) the unasserted and invalidated independent claims from which each asserted claim depends.  Mr. Doller's analysis necessarily assumes that the independent claims are the asserted claims and therefore does not account for the narrower scope of the invention covered by the dependent claims.  Thus, Mr. Doller's analysis is fatally flawed because he did not compare the patented technology (*i.e.*, the dependent claims) with the closest, unpatented technology.

████████████████████████████████████

Dr. Mody's opinions based on her "license" theory should be excluded because she uses a royalty rate from an allegedly-comparable Viasat license agreement having one royalty base, and then applies that rate to a different royalty base for Kioxia without apportioning or otherwise accounting for the differences.

Finally, Dr. Khatri's opinions regarding the asserted patent's compliance with the Section 112 written description cannot be discussed in front of the jury. Dr. Khatri does not follow the law of written description in his analysis and takes into account material that is not permitted under a written description analysis.

## II.    FACTUAL BACKGROUND

### A.    Viasat's Damages Theories

Viasat accuses Kioxia of infringing four dependent claims of U.S. Patent No. 8,615,700 ("the '700 Patent"), which is directed to a circuitry design used in forward error correction ("FEC") in flash memory. *See* Ex. Q ('700 Patent) at 1:16-17. At the time expert reports were exchanged, Viasat was asserting dependent claims 4, 6, 10, 11, 13, 14, 16, and 21. On January 4, 2024, Viasat narrowed its case to dependent claims 6, 11, 13, and 16. Despite Viasat only asserting dependent claims with different added limitations, their experts offer a *single* royalty rate and damages number for all of those dependent claims.

Dr. Mody, one of Viasat's damages experts, bases her opinions on three theories. Her first theory is a "license" theory that results in a ████████████ for the '700 Patent, allegedly corresponding to ████████████. But, because the '████████████████████████████[1] Dr. Mody derives a royalty rate from a V████████████████████████████████

---

[1] Ex. A, Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1 to 9) at 3.

███████████████████████████████████████████

████████████████████████████ in a different technical field.[2]   Dr. Mody's theory expressly relies on opinions from Dr. Russell Fuerst, a Viasat employee and named inventor on the '700 Patent, for two steps under this theory—(a) the technical comparability of the '700 Patent to two different patents purportedly █████████████████████ and (b) an apportionment of the royalty rate of the ███████████ to those two purportedly-comparable patents.  Dr. Mody's other two damages theories, her "incremental value" and "cost-based" theories, are based on analyses by Viasat expert Mr. Doller regarding the alleged contributions of the '700 Patent to a solid state drive's ("SSD") capacity or cost savings.  Dr. Mody asserts that the "incremental value" theory would support a damages value of ████████ and that the "cost-based" theory would support a value of █████.  Based on these three theories, Dr. Mody asserts that Kioxia should have to pay Viasat damages of approximately █████ for its use of the invention claimed in the '700 Patent.  *See* Ex. C, Expert Report of Dr. Nisha M. Mody ("Mody Report") (Excerpts) at ¶ 135.

### 1.    Viasat's "License Theory"



███████████████████████████████████████████████

███████████████████████████████████████[3]   *See* Ex. B, at 1.   In that agreement, ████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ agreed to pay Viasat ████████████████████████████

███████████████████████████████████████.   *Id.*, at § 5.2.1.   In terms of

---

[2] See Ex. B, VIASAT_FEC_00016700-732 ████████████████
█ ████████████████████ was subsequently amended three times, but none of the terms relevant to the present motion were changed in the amendments.

██████████████████████████████████████████████

technological comparability to the present case, ████████████████ did not involve the '700 Patent.  The '700 Patent concerns flash memory, while the ████████████████████████ ████████████, and there is no dispute that the '700 Patent was not licensed under the ██████ ██████████  To get around this problem, Viasat alleges that two unasserted patents—U.S. Patent No. 8,705,664 and U.S. Patent No. 8,930,789 (the "'664 Patent" and the "'789 Patent," respectively)—were inherently licensed under the ████████████t, and that the '664 and '789 Patents are technologically comparable to the '700 Patent.  *See* Ex. C, at ¶¶ 53 & 116 (citing Dr. Fuerst).

Viasat relies on these patents to link the ████████████t to the '700 Patent.  But, the '664 and '789 Patents did not even exist when the ████████████t was signed.  The ██████ ████████████████████, and the '664 and '789 Patents did not issue until 2014 and 2015.  *See* Ex. R, '664 Patent at 1; Ex. S, '789 Patent at 1.  Dr. Mody and Dr. Fuerst completely ignore this timing in their opinions.



Moreover, from an economic standpoint, there are several critical differences between the ████████████████ and the hypothetical negotiation in this case.  To account for some (but not all) of the differences, Dr. Mody relies on Dr. Fuerst to provide "apportionment" factors to subtract out the economic value of various unpatented features, including the ████████████ *i.e.*, the real

4

world technology transferred pursuant to the agreement).  Dr. Fuerst's "apportionment" reduces the 1█████████████████████████████████, which Dr. Mody adopts as the royalty rate under her "license" theory.  A summary of Dr. Mody's analysis purportedly based on Dr. Fuerst's "apportionment" factors is shown in the following table:[4]

**Dr. Mody's Apportionment Analysis**
**Based on Dr. Fuerst**

| Description | | "Apportionment" Factor |
|---|---|---|
| ████████████████████e | [A] | ██ |
| Remove ████████ | [B] | ██ |
| Then, remove ███████████████ ██████████████ | [C] | ██ |
| Then, remove ██████████████ ██████1███████████ ████████████ | [D] | ██ |
| **Dr. Mody's royalty rate under her license theory** | [A] x [B] x [C] x [D] | ██ |

Dr. Mody opines that the above adjustments "result[] in a fully apportioned royalty of ██ of net sales."  Ex. C, at ¶ 116.

Dr. Fuerst was front-and-center in providing the entire technical basis for the apportionment analysis described above.  But, Dr. Fuerst did not provide an expert report that details his "apportionment" methodology.  Instead, Viasat provided a Rule 26(a)(2)(C) disclosure stating that Dr. Fuerst is "expected to testify" about two steps that support Dr. Mody's analysis.  Ex. D, Rule 26(a)(2)(C) Disclosure of Russell Fuerst at 2.  Dr. Fuerst's first step is his conclusion that the '664 and '789 Patents are comparable to the asserted '700 Patent.  Dr. Fuerst's second step is his apportionment of the value of the '664 and '789 Patents in the ████████████████  Both of Dr. Fuerst's steps are flawed.

---

[4] *See* Ex. C, at ¶¶ 115-16.

███████████████████████████████████████████████████████████

*As for the first step*, Dr. Fuerst admitted in his deposition that his comparison of the '664 and '789 Patents to the '700 Patent was not based on the claims of the patents. *See, e.g.*, Ex. E, Fuerst Dep. Tr. (Dec. 7, 2023) (Excerpts) at 41:24-42:21. Without an analysis of the patents' claims, Dr. Fuerst's patent-to-patent comparability opinions are flawed and cannot be presented to the jury.

*As for the second step*, Dr. Fuerst diverged from Dr. Mody's analysis and offered a different set of apportionment factors. Dr. Fuerst testified at his deposition that ████████████████ ████████████████████ was attributable to ████████████ (*id.*, at 113:12-20) and ██████████ ████████████████████████ (*id.* at 116:8-117:8), both of which are unrelated to the patented technology. Of the remaining ████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████. *Id.* at 113:23-114:4 & 134:24-135:8. Then, ███ ███████████████████████████████████████████████████████████ ████████████ *Id.* at 125:5-14 & 125:17-126:3.

## 2.    Viasat's "Cost Based Theory" and "Incremental Value Theory"

In support of Dr. Mody's other two damages theories, Mr. Doller, one of Viasat's experts, provides opinions regarding the benefits of certain features of the accused SSDs, which Dr. Mody then uses as the basis for her "cost based" and "incremental value" theories. Mr. Doller conducts analyses on the storage avoided or increased capacity allegedly due to these two features, which he calls iterative error correction and variable error correction. Ex. P, Expert Report of Edward Doller ("Doller Report"). However, his report does not connect these features to the asserted claims. Mr. Doller admitted at his deposition that he did not analyze any of the claims of the '700 Patent, did not compare any of the asserted claims to unasserted claims of the '700 Patent, and did not account for the incremental value of the asserted dependent claims over the unasserted

independent claims from which they depend.  Ex. F, Doller Dep. Tr. (Excerpts) at 40:15-41:1 & 41:25-42:18.  Further, while Mr. Doller claims to rely on Dr. Hassoun, Viasat's infringement expert, for establishing the required relationship to the asserted claims, Dr. Hassoun's expert report is devoid of any such analysis and he has no recollection of discussions with Mr. Doller.  Ex. G, Hassoun Dep. Tr. (Excerpts) at 68:8-17 & 106:4-107:15.

### B.      Viasat's Written Description Theory

Finally, Viasat's validity expert, Dr. Khatri, provides opinions on the validity of the '700 Patent, including opinions regarding the patent's compliance with written description requirements under 35 U.S.C. § 112.  Dr. Khatri's written description opinions are based on materials listed under the "References Cited" on the front page of the '700 Patent.  However, because the materials were not incorporated by reference, they are not part of the patent specification and may not be relied upon as evidence of compliance with the written description requirement.

### III.   LEGAL STANDARD

An expert witness may provide opinion testimony only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  District courts are "gatekeepers" to ensure that all "evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 589 (1993).

"Expert testimony is admissible when it is both relevant and reliable."  *Ayoub v. Chubb Lloyds Ins. Co. of Tex.*, No. EP-13-CA-58, 2014 WL 12489692, at *1 (W.D. Tex. Apr. 28, 2014) (citing *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013)).  "'The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's

████████████████████████████████

opinion, the link between the facts and the conclusion, et alia.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)). Further, the Fifth Circuit standards state that "any step that renders the analysis unreliable . . . *renders the expert's testimony inadmissible*." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670-71 (5th Cir. 1999) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)).

## IV.    ARGUMENT

### A.    Dr. Fuerst's Opinions Should be Excluded Because They Have No Disclosed Methodology and Are Not Tied to the Facts of the Case.

Dr. Fuerst's opinions regarding the technical comparability and apportionment of the value of patents allegedly licensed under the ███████████ should be excluded because those opinions have no disclosed, much less testable, methodology and are not tied to the facts of this case.

#### 1.    Dr. Fuerst's First Step—His Opinions Regarding the Technical Comparability of the ███████████—Are Not Tied to the Facts of This Case.

Viasat concedes that the ███████████ did not license the '700 Patent or SSD technology.[5] Thus, to rely on the ███████████ to support a royalty rate, Viasat must show that the technology licensed under that agreement is technically comparable to the invention in the asserted '700 Patent claims. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012).

Dr. Fuerst will provide his opinion to the jury that the unasserted '664 and '789 Patents are comparable to the asserted '700 Patent. Ex. D. A threshold problem with Dr. Fuerst's patent-to-

---

[5] Ex. A, at 3; Ex. O, Fuerst Dep. Tr. (July 19, 2023) (Excerpts) at 249:24-250:7.

███████████████████████████████████████████████

patent comparability opinion is that the '664 and '789 Patents did not even exist when the ███████

████████ was negotiated and signed.  Dr. Fuerst does not explain how ███████ and Viasat could

have negotiated a royalty rate for a license to patents that did not exist during those negotiations.

As such, Dr. Fuerst's opinions regarding the '664 and '789 Patents are not sufficiently tied to the

████████████████ or to the facts of this case, are without some methodology to account for this

disconnect, and can be excluded for this threshold reason alone.

Dr. Fuerst's expert disclosure also does not state how he concluded that the unasserted '664

and '789 Patents are comparable to the asserted '700 Patent.    Dr. Fuerst revealed his

"methodology" in his deposition.  By his own admission, Dr. Fuerst did not compare the '664 and

'789 Patents with the asserted patent based on their *claims*:



*See* Ex. E, at 41:24-42:21 (emphasis added).  Dr. Fuerst testified that he ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████.  *See id.* at 42:23-44:4.  But it is black letter law that the scope of a patent

is determined by its claims, not by the figures or the abstract.  Two patents can have similar text

and drawings but have significantly different scopes.  Thus, Dr. Fuerst's admission that he did not

████████████████████████████████████████████████

compare the patents according to their claims to determine comparability is fatal to his opinions, and thus his opinions cannot be presented to the jury.

Dr. Fuerst's failures go even further. Dr. Fuerst also did not compare the asserted '700 Patent with the technology in the ████████████████ at all:

████████████████████████████████████████

████████████

██████████████████████████████████████

████████████████████████████████

*Id.* at 126:16-22 (emphasis added). At most, Dr. Fuerst's opinions assert "a loose or vague comparability" between technology licensed under the ████████████████ and the '700 Patent without tying them to the patents' claims. *See LaserDynamics*, 694 F.3d at 69. Such opinions do not pass muster under Fed. R. Evid. 702.

Viasat also cannot hide behind a Rule 26(a)(2)(C) disclosure to rely on undisclosed "expected opinions" for this analysis, particularly since these opinions are based on inputs that Viasat has withheld as privileged. Dr. Fuerst purportedly identified the '664 and '789 Patents as "comparable" to the '700 Patent based on a larger list of Viasat patents that Viasat's counsel provided to him, but Dr. Fuerst does not know how that list was generated. *See* Ex. E, at 24:12-22, 26:7-16, & 27:18-28:6. Viasat also has refused to produce communications from Viasat's counsel that Dr. Fuerst relied upon in reviewing the list of patents. *See* Ex. H, Email from Samara Hoose to Roger Fulghum dated Dec. 19, 2023. In fact, Viasat's attorneys drafted the Rule 26(a)(2)(C) disclosure, and Dr. Fuerst does not even remember approving the final version. *See* Ex. E, at 10:9-14 (██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████ s

10

███████████████████████████████████████████████████████

████████████████████████████████████████████████ ”).    Viasat cannot use Rule

26(a)(2)(C) as a sword and a shield—providing technical expert opinions necessary to support

their damages theories under that rule, but withholding as privileged materials Dr. Fuerst relied

upon in forming those opinions.[6]  *Cf. Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*, No. 6:20-CV-

00969-ADA, ECF. No. 228, *Memorandum Opinion & Order*, at 12 (W.D. Tex. Oct. 4, 2022)

(precluding expert report's reliance on the "expected opinions" of a Rule 26(a)(2)(C) disclosure

drafted by attorneys as not "based on sufficient facts or data").

### 2.    Dr. Fuerst's Second Step—His Opinions Regarding Apportionment of the ████ Agreement—Are "Plucked Out of Thin Air."

Dr. Fuerst's "apportionment" methodology is not disclosed at all.  Dr. Fuerst's opinions

are entirely contained in Viasat's Rule 26(a)(2)(C) disclosure and his deposition testimony.

However, the Rule 26(a)(2)(C) disclosure says nothing about Dr. Fuerst's apportionment

methodology; it merely states his "expected" conclusions.  Dr. Fuerst's deposition testimony does

not remedy the deficiency.   Dr. Fuerst asserted that the two allegedly-comparable patents

represented 80% of the patent value in the ██████████████[7]  However, by Dr. Fuerst's own

admission, that opinion is based purely on a "██████████████" and the notion that "████████

████████████████████████████.

---

[6] Since Fed. R. Civ. P. 26(b)(4)(C) only protects attorney communications with experts that are required to provide a report, Kioxia does not concede that these communications can be privileged. However, to the extent Viasat takes the position that those communications with Dr. Fuerst are protected under that Rule, Viasat still cannot withhold them since they contain at least a list of patents and potentially other facts that Dr. Fuerst relied upon in forming his opinions. *See* Fed. R. Civ. P. 26(b)(4)(C)(ii) & (iii) (communications that identify facts, data, or assumptions that the attorney provided and the expert relied upon in forming opinions are not privileged).

[7] Dr. Mody's and Dr. Fuerst's characterizations on how to apportion different percentages of the ████ royalty rate to different technologies do not align.  Nevertheless, Dr. Fuerst explained in his deposition that some portion of the royalty rate was related to patented technology, and he split that portion ████████████████████████████████████████████████████.



Ex. E, at 134:13-23 (emphasis added).  When probed further about this ▮▮▮▮ split, Dr. Fuerst stated that he doesn't "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮"  *Id.* at 133:18-134:7.  Dr. Fuerst also did not apportion or analyze the value attributable to the '664 and '789 Patents separate from other technology licensed in the ▮▮▮▮ ▮▮▮▮

*Id.*, at 125:5-14 (emphasis added).

*Id.*, at 125:17-126:3 (emphasis added).

This testimony forecloses Dr. Fuerst from speaking to the jury about how the ▮▮▮h royalty rate is related to any Viasat patent.  Dr. Fuerst was given the opportunity to explain how the royalty rate was attributable to each of the '664 and '789 Patents and, for each, he testified that the best he could do was a split between ▮▮▮▮▮ but that he had ▮▮▮▮▮▮▮ ▮▮▮▮▮" the '664 and '789 Patents.  If he cannot explain this in his deposition or his Rule

12

██████████████████████████████████████████

26(a)(2)(C) disclosure, he cannot explain it to the jury.  Dr. Fuerst's self-characterized "████

████████"[8] are exactly the type of vague, "plucked out of thin air" approaches that cannot

support expert testimony on apportionment in a patent case.  *See Exmark Mfg. Co. Inc. v. Briggs*

*& Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018) ("[It] is not enough for

an expert to simply assert that a particular royalty rate is reasonable in light of evidence without

tying the proposed rate to that evidence."); *LaserDynamics*, 694 F.3d at 69 (rejecting

apportionment that was "plucked out of thin air based on vague qualitative notions of the relative

importance of the [accused technology]"); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-

00513-ADA, 2021 WL 12093334, at *4 (W.D. Tex. Nov. 9, 2021) (same, citing further cases).

In apportioning only ████ of the value of the ███████████████████████████ (*i.e.*,

the actual real-world technology transferred under the agreement), Dr. Fuerst again does not

disclose any apportionment methodology.  Instead, Dr. Fuerst broadly references his "experience

[with] customers" that gave him "a sense as to what the relative value of the ████ was to the

forward error correction."  Ex. E, at 116:16-25.  But Dr. Fuerst does not explain **how** he used that

experience to apportion the unasserted ██████████.  Dr. Fuerst's "apportionment factors" are

"nothing more than *ipse dixit* statements" of his personal experience that are "not based on reliable

principles and methods that can be accurately reproduced, examined, and challenged."  *See BMC*

*Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 379620, at *2 (E.D. Tex. Feb.

1, 2016).  Nor does Dr. Fuerst disclose his experience in any verifiable details, and there is no way

for Kioxia or the trier of fact to test his opinions.

---

[8] Ex. E, at 134:13-23.

████████████████████████████████████████████████████

As another example, when probed on how his "experience" with customers caused him to assign ████ of the value of the ████████████████████████████" Dr. Fuerst provided another "████████████," claiming that "████████████████████████████████

████████████████████████████████████████████████████

████████████████" Ex. E, at 104:22-105:9.  Dr. Fuerst does not explain ***how*** "████████████

████████████████████████████████████" means that ████████ would have attributed ████

of the license fee to Viasat's brand.  Thus, Dr. Fuerst leaves Kioxia and the trier of fact no opportunity to understand or test his methodology.

Instead of disclosing a testable apportionment methodology, Dr. Fuerst asserts that the ████████████ he applied to patents licensed under the ████████████ is not tied to any individual technology, and that "████████████:



*Id.*, at 133:18-134:7 (emphasis added).

*Id.*, at 136:19-137:2 (emphasis added).  Again, this is fatal to Dr. Fuerst's opinions and cannot be corrected.  Dr. Fuerst could not identify a single patent that was in either the ████████ category or the ████████ category, and would not identify the purportedly comparable patents—the'664

14

and '789 Patents—as falling within either category.  Dr. Fuerst's approach does not tie any particular technology, patent, or claim to his proposed █████████ split, and thus his opinions should be excluded.  *See Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1379-80 (Fed. Cir. 2021) (rejecting royalty calculations because "we fail to see how this patent/claim-independent approach accounts for apportionment.") (footnote and internal citation omitted).

***

In sum, Dr. Fuerst's "analyses" are fatally flawed and cannot provide the basis for any opinions on the technical comparability or apportionment of the █████████████, or any testimony from Dr. Mody on her "license" theory.  The Court must exercise its role as a gatekeeper and exclude Dr. Fuerst's opinions in their entirety.

### B.  Mr. Doller's Opinions Should Be Excluded Because He Did Not Account For the Incremental Value of the Asserted Claims.

Another Viasat expert, Edward Doller, conducts an analysis on the alleged value of two features, which he calls "iterative error correction" and "variable error correction."  Specifically, Mr. Doller estimates (1) the increased capacity and (2) the avoided storage for the accused Kioxia SSDs associated with these two features by comparing them against what he claims was the best non-infringing error correction scheme available to Kioxia based on Kioxia's product roadmaps.[9] Dr. Mody relies on Mr. Doller's opinions that the '700 Patent increased the capacity of SSDs to opine on an "incremental value" theory of damages.  She also relies on Mr. Doller's opinions that the '700 Patent avoids storage and thus lowers the cost of SSDs to opine on a "cost-based" theory of damages.

---

[9] Ex. F, at 63:6-8 ("I ████████████████████████████████ ███████████████████████████.");  *id.* at 61:12-62-7.



Mr. Doller, however, does not connect the only two features he analyzed, "iterative error correction" and "variable error correction," to the asserted dependent claims. *See Omega Pats.*, 13 F.4th at 1380 ("[T]he ultimate reasonable royalty must be based on the incremental value that the patented invention adds to the end product . . . . [W]e fail to see how this patent/claim-independent approach accounts for apportionment.") (internal citation and quotation omitted).

As an initial matter, Mr. Doller did not conduct any analysis or comparison of the claims of the '700 Patent to the accused products, and admits that he has not compared any of the asserted claims to unasserted claims in his analysis.

Ex. F, at 40:15-41:1 (emphasis added).

*Id.*, at 41:25-42:18 (emphasis added).

16

Mr. Doller's failure to tie the limitations added by the asserted dependent claims to his increased capacity and avoided storage analyses means that Mr. Doller's opinions could equally apply to the unasserted independent claims, which have all been found unpatentable by the Patent Office in a final written decision and which Kioxia is free to practice.[10]  For example, asserted claim 6, which depends from claims 1 and 4, adds "an error monitoring module . . . configured to monitor a rate of errors" as well as a "power controller . . . configured to selectively power-up one or more error correction sub-modules." Ex. Q, at 11:16-24.  Mr. Doller conducts no analysis of these additional limitations added by claim 6, and nothing in Mr. Doller's report analyzes why his incremental value and cost savings conclusions apply to claim 6, but not also unasserted claim 1 from which it depends.  The same is true for all of the remaining asserted claims, dependent claims 11, 13, and 16.  There is no factual foundation for applying Mr. Doller's analysis to the asserted claims.  *See SPEX Techs., Inc. v. W. Digit. Corp.*, No. SACV 16-01799-JVS (AGRx), 2023 WL 6922860, at *6 (C.D. Cal. Oct. 3, 2023) (excluding opinions of damages expert where expert "provide[d] no technological factual foundation" for his opinion related to the asserted claims).  In sum, Mr. Doller is analyzing the value of the wrong claims; his analysis does not focus on the actual scope of the dependent claims asserted.  This is akin to a damages analysis concerning a dependent claim directed to an automobile with an enhanced cruise control feature, but attempting to assess damages based on the value of driving generally.

Mr. Doller admits that he has not accounted for the incremental value of the asserted dependent claims.  By virtue of the independent claims being unasserted and invalidated, they are

---

[10] The independent claims of the asserted '700 patent have been found unpatentable by the Patent Office in a final written decision in a co-pending *inter partes* review.  Ex. N, Final Written Decision in IPR2022-01126 (Nov. 20, 2023).



available non-infringing alternatives, and any analysis of the value of the asserted dependent claims must account for what they are adding over the independent claim from which they depend. *See Exmark*, 879 F.3d at 1348 (noting "the patent owner must apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product"); *see also Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ("Moreover, only by comparing the patented invention to its next-best available alternative(s) – regardless of whether the alternative(s) were actually produced and sold during the infringement – can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward[.]").

Viasat's infringement expert, Dr. Hassoun, does not help link Mr. Doller's analysis to the asserted claims. Dr. Hassoun's report does not explain how Mr. Doller's analysis applies to the asserted dependent claims but not to the unasserted and invalidated independent claims. For his part, Dr. Hassoun does not even remember discussing variable error correction or iterative error correction with Mr. Doller:



Ex. G, at 68:8-17; *id.* at 70:2-4.

18

███████████████████████████████████████████████████

Mr. Doller's failure to compare the asserted dependent claims with the unasserted and invalidated independent claims is a fatal flaw in his increased capacity and avoided storage analyses because he did not compare the patented technology with the closest, unpatented (and indeed, recently invalidated) technology. *See Grain Processing*, 185 F.3d at 1351 ("[O]nly by comparing the patented invention to its next-best available alternative(s) . . . can the court discern the market value of the patent owner's exclusive right[.]"). Thus, Mr. Doller's analysis is not reliable evidence to determine the value of the asserted claims and his opinions regarding increased capacity and avoided storage due to the '700 Patent should be excluded.

### C. Dr. Mody's Opinions Should be Excluded in Their Entirely For Their Reliance on Unreliable and Irrelevant Opinions of Dr. Fuerst and Mr. Doller.

Dr. Mody's opinions should be excluded in their entirety. Dr. Mody's opinions are based on three theories—a "license" theory that relies on "apportionment" opinions from Dr. Fuerst, and an "incremental" value theory and a "cost-based" theory that each rely on opinions from Mr. Doller. However, Dr. Fuerst's and Mr. Doller's opinions on which Dr. Mody bases her theories are faulty for the reasons explained above. *See* Sections IV.A and IV.B, *supra*. Thus, Dr. Mody's opinions should be excluded in their entirety.

### D. Dr. Mody's Opinions Based on the ████████████ Should Be Excluded Because Dr. Mody Used the Wrong Royalty Base.

Dr. Mody's opinions under her "license approach" also should be excluded as unreliable because she applied a royalty rate from the ████████████ that was based on the sale of controllers to a completely different royalty base in Kioxia's sales of SSDs, and did not account for these differences.

As Dr. Mody acknowledges, the accused SSDs include both flash memory and a controller such as an application specific integrated circuit ("ASIC"). Ex. C, at ¶ 28. Those components are shown in an example of an accused SSD from Viasat's Complaint below.



ECF No. 1, Viasat's Complaint for Patent Infringement at 15 (red and blue annotations added). The FEC methods for flash memory allegedly claimed in the '700 Patent are implemented in the controller. Ex. C, at ¶¶ 18 & 28. In her "license approach," Dr. Mody uses the ▮▮▮▮▮▮▮ under the ▮▮▮▮▮▮▮▮▮▮▮t as a baseline to determine a reasonable royalty rate that Kioxia would have paid for a license to the '700 Patent. *Id.* ¶¶ 115-16. After allegedly assessing the portion of that ▮▮▮▮▮ attributable to technically comparable patents licensed under the ▮▮▮▮▮ ▮▮▮▮▮▮ Dr. Mody applies the allegedly-apportioned rate (5.4%) to Kioxia's revenue for sales of ***the accused SSD products***. *Id.* at ¶¶ 116-119.

However, the ▮▮▮▮▮▮▮▮▮ defined the ▮▮▮ royalty based on the gross amount billed by ▮▮▮▮ for sales of ▮▮▮▮▮▮▮ which were defined as ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. B, at § 1.16, 1.18, & 5.2.1.[11] Indeed, the FEC

---

[11] Viasat's other licenses that Dr. Mody considered technically comparable to a license for the '700 Patent and that contained a running royalty as a percentage of net sales similarly defined the royalty

methods that Viasat purportedly developed for and licensed to ▮▮▮▮ under that agreement would have been implemented in such a controller.  *Id.*, at Exhibit A § 1-3.  But Dr. Mody provides no analysis demonstrating that a royalty rate applicable to a controller should also be applicable to an SSD, which is much broader from an economic and technical standpoint.  Viasat cannot, on the one hand, argue that the smallest saleable unit of the '700 Patent is an SSD and, on the other hand, rely on allegedly-comparable licenses that tie royalties to controllers, which are components of those SSDs.  In other words, Dr. Mody cannot "mix and match" royalty bases for sales of multi-component SSDs with a baseline royalty rate intended for only a ***component*** of such devices without some adjustment to account for those differences.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("[T]he ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.") (internal citation omitted).  Dr. Mody makes no attempt to adjust the royalty rate in the ▮▮▮▮ ▮▮▮▮ to account for a different royalty base, nor does she show that the entire market value rule would otherwise justify using the broader royalty base here.

As Dr. Mody concedes, ▮▮▮▮ did not sell any devices or pay any royalties to Viasat under the ▮▮▮▮ and so there is no way to establish that the royalty base would have been comparable in magnitude to the royalty base that Dr. Mody uses for the '700 Patent.  *See* Ex. C, at ¶¶ 73 & 107.  Thus, Dr. Mody's "license theory," in which she proposes ▮▮▮▮ in reasonable

---

base as revenue from the licensees' sales of controllers.  *See* Ex. I, VIASAT_FEC_00016272-284 ▮▮▮▮ at § 1(k)-(l); *see also* Ex. J, VIASAT_FEC_00016598-651 ▮▮▮▮ at Exhibit A § 2-4; *see also* Ex. K, VIASAT_FEC_00016652-665 ▮▮▮▮ at §1 (h) and (j).

royalties, is not a reliable expert opinion that could justify any royalty calculated using a base greater than the sales of the controller.

> **E.   Dr. Khatri's Opinions Regarding the '700 Patent's Compliance With the Section 112 Written Description Requirement Should be Excluded Because They Are Based on a Flawed Understanding of That Requirement.**

Dr. Khatri's opinions in Sections IX.A, IX.C, and IX.E of his Rebuttal Report of Dr. Sunil Khatri Regarding the Validity of U.S. Patent No. 8,715,700 ("the Khatri Report") are based on a fundamentally flawed understanding of the written description requirement that renders his opinions unreliable and misleading to the jury.[12]  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (To satisfy 35 U.S.C. § 112, the specification must "convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.") (internal citation omitted).  Specifically, Dr. Khatri's opinions are based on the incorrect assumption that the "References Cited" listed on the cover page of the '700 Patent are incorporated by reference as part of the specification.  *See* Ex. L, Khatri Report (Excerpts) at ¶¶ 476-486, 502, & 516; Ex. M, Khatri Dep. Tr. (Excerpts) at 247:11-22 & 249:12-14.

Dr. Khatri bases his written description opinions on materials listed under the "References Cited" on the front page of the '700 Patent, but those materials are not part of the specification of the patent unless they were explicitly incorporated by reference in the specification.  *See, e.g.*, 37 C.F.R § 1.57(c) (setting out the requirement for incorporation by reference); *see also* MPEP (9th ed. Rev. 7.2022, Feb. 2023) §1302.12 (the "References Cited" lists the materials that were considered by the examiner during prosecution); *cf. Commonwealth Sci. & Indus. Rsch.*

---

[12] Sections IX.A, IX.C, and IX.E of the Khatri Report pertain to the claim terms "error detection modules and error correction modules," "forward the portion of the respective received stream containing an error to an error correction module," and "the error detection module comprises the decoding module," respectively.

*Organisation v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1372 (Fed. Cir. 2008) ("To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents.") (internal citation omitted). Viasat did not incorporate by reference any of the materials listed under the "References Cited" section into the '700 Patent specification.

Dr. Khatri did not understand this critical distinction, and this legal error renders his opinions unreliable and misleading. In his report, Dr. Khatri repeatedly claims that the specification of the '700 Patent "cites" numerous publications that provide further details related to the claim terms at issue. *See* Ex. L, at ¶ 484 ("The specification also cites a publication by Micron Technology"), ¶ 486 ("The specification also cites U.S. Patent No. 7,296,213"), ¶ 477 ("the '700 Patent cites a Numonyx document"), ¶ 479 ("the '700 Patent also cites Chen, at al."), & ¶ 516 ("'700 Patent also cites numerous publications"). These statements are incorrect—not a single one of these documents was cited by the specification of the '700 Patent. Indeed, the specification does not cite or incorporate anything other than the provisional application.[13]

Moreover, Dr. Khatri formed his opinions based on the misunderstanding that because those publications were listed as "References Cited," they are "implicitly incorporated by reference" into the specification. Ex. M, at 247:11-22 & 249:12-14. They are not. *Cf. Commonwealth*, 542 F.3d at 1372 (finding a footnote citation to a publication, without comment, to be insufficient to incorporate the publication by reference); *cf. Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06-CV-01191-ERW, 2007 WL 4564196, at *19 (E.D. Mo. Dec. 21, 2007) ("The [reference] is not listed in the publications incorporated by reference[]. It is listed

---

[13] Viasat is not claiming that any of the asserted claims are entitled to the priority date of the provisional application.

among *eight pages* of references cited [] on information disclosure statements, but this list is not incorporated by reference into the application.").

Dr. Khatri also relied on a conclusory assertion that the inventors consciously chose to cite those publications in the specification to guide a person of skill in the art.  Ex. M, at 241:4-243:12. But those references were not mentioned in the specification, and whether or not the inventors disclosed certain references to the patent office is irrelevant to evaluating the written description requirement.

Thus, Dr. Khatri's analysis impermissibly extended beyond the four corners of the specification, flying in the face of the Federal Circuit's test for evaluating written description sufficiency.  *Ariad*, 598 F.3d at 1351 (requiring an "objective inquiry into the *four corners* of the specification from the perspective of a person of ordinary skill in the art") (emphasis added). Although Dr. Khatri makes conclusory assertions that his opinions would not change even if those materials were not considered, this does not change the fact that his opinions on written description were formed based on inaccurate assumptions and legal errors.  Dr. Khatri's flawed methodology infects his opinions in their entirety.

These serious flaws in Dr. Khatri's methodology render his opinions in Sections IX.A, IX.C, and IX.E of the Khatri Report unreliable and misleading to the jury.  *See* Fed. R. Evid. 702; *see also* Fed. R. Evid. 403.  Accordingly, Kioxia requests that this Court exclude Dr. Khatri's opinions in those sections of the Khatri Report and preclude him from opining on the sufficiency of the written description of the claim terms discussed in those sections.

## V.    CONCLUSION

For the foregoing reasons, Kioxia respectfully requests that the Court exclude Mr. Doller's opinions regarding the cost of a design-around and the incremental value of the invention, Dr.

24

Khatri's opinions regarding the asserted patent's compliance with the written description requirement, and Dr. Mody's and Dr. Fuerst's opinions in their entirety.

Dated: January 18, 2024

Respectfully submitted,

*/s/ Michael Hawes*
Michael Hawes
Texas State Bar No: 24010761
Telephone: (713) 229-1750
Facsimile: (713) 229-7750
Email: Michael.Hawes@bakerbotts.com

Robinson Vu
Texas State Bar No: 24047046
Telephone: (713) 229-1715
Facsimile: (713) 229-7815
Email: Robinson.Vu@bakerbotts.com

Roger Fulghum
Texas State Bar No. 00790724
Telephone:  (713) 229-1707
Facsimile:  (713) 229-2707
Email:  Roger.Fulghum@bakerbotts.com

Michael Silliman
Texas State Bar No: 24093152
Telephone: (713) 229-1464
Facsimile: (713) 229-6164
Email: Michael.Silliman@bakerbotts.com

Spencer Packard
Texas State Bar No: 24125823
Telephone: (713) 229-1888
Facsimile: (713) 229-7788
Email: Spencer.Packard@bakerbotts.com

**Baker Botts L.L.P.**
910 Louisiana Street
Houston, Texas 77002

*Attorneys for Defendants*
*Kioxia Corporation and Kioxia America,*
*Inc.*

25

████████████████████████████████████

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on January 18, 2024, a true and correct copy of the foregoing was served on all counsel of record who have appeared in this case via email.

/s/  Michael Hawes

Michael Hawes

**CERTIFICATE OF CONFERENCE**

On January 18, 2024, counsel for Defendants spoke with counsel for Viasat regarding Defendants' Motion to Exclude Certain Opinions of Dr. Russell Fuerst, Dr. Nisha Mody, Mr. Edward Doller, and Dr. Sunil Khatri.  Counsel for Viasat indicated that it will oppose Defendants' motion.

/s/  Michael Hawes

Michael Hawes