# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  |  |
|---|---|
| **VIASAT, INC.,** | |
| **Plaintiff,** | |
| **vs.** | **Case No.:  6:21-cv-01231-ADA** |
| **KIOXIA CORPORATION and KIOXIA AMERICA, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## <u>AMENDED JOINT PRE-TRIAL ORDER</u>

**TABLE OF CONTENTS**

I.     APPEARANCE OF COUNSEL...................................................................................1

       A.     Counsel for Viasat................................................................................1

       B.     Counsel for Kioxia...............................................................................1

II.    JOINT STATEMENT OF THE CASE.......................................................................2

III.   CONTENTIONS OF THE PARTIES..........................................................................3

       A.     Viasat's Contentions ..........................................................................3

       B.     Kioxia's Contentions ..........................................................................4

IV.    STIPULATED FACTS .................................................................................................5

V.     REPRESENTATIVE PRODUCTS AGREEMENT.....................................................6

VI.    DISPUTED ISSUES OF FACT AND LAW................................................................7

VII.   EXHIBITS ....................................................................................................................7

VIII.  WITNESSES.................................................................................................................8

IX.    DEPOSITION DESIGNATIONS.................................................................................8

X.     PROCEDURAL STIPULATIONS AND TRIAL DISCLOSURES ..............................9

       A.     Motions ...............................................................................................9

       B.     Exhibits ...............................................................................................9

       C.     Witnesses ..........................................................................................13

       D.     Deposition Testimony ......................................................................14

       E.     Demonstrative Exhibits ....................................................................16

       F.     Disclosures for Opening Statements ................................................18

       G.     Discovery Responses ........................................................................19

       H.     Order of Presentation .......................................................................20

              a.     Opening Statements .............................................................20

              b.     Evidence...............................................................................20

        c.     Closing Arguments ........................................................................21

    I.     Agreed Juror Notebooks............................................................................21

XI.    PROPOSED JURY INSTRUCTIONS..................................................................22

XII.   LIST OF PENDING MOTIONS..........................................................................22

XIII.  VOIR DIRE.............................................................................................................23

XIV.  VERDICT FORM ...................................................................................................23

Plaintiff, Viasat, Inc. and Defendants Kioxia Corporation and Kioxia America, Inc. ("Kioxia") submit the following proposed Joint Pre-Trial Order according to the Court's Agreed Amended Scheduling Order (Dkt. 119), the Court's Standing Order on Pre-Trial Procedures and Requirements in Civil Cases, the Federal Rules of Civil Procedures, and the Local Rules of this Court. The parties have stipulated to various matters identified herein and have identified exhibits, witnesses, factual contentions, and triable issues. The Final Pretrial Conference is scheduled for June 24, 2026; jury selection is scheduled for July 9, 2026; and trial is scheduled to begin on July 13, 2026.

## I.    APPEARANCE OF COUNSEL

### A.    Counsel for Viasat

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

James Travis Underwood
State Bar No. 24102587
GILLAM & SMITH, LLP
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
travis@gillamsmithlaw.com

J. Scott McBride (*Pro Hac Vice*)
Matthew R. Ford (*Pro Hac Vice*)
Nevin M. Gewertz (*Pro Hac Vice*)
Meg Fasulo (*Pro Hac Vice*)
Jordan G. Golds (*Pro Hac Vice*)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
scott.mcbride@bartlitbeck.com
matthew.ford@bartlitbeck.com
nevin.gewertz@bartlitbeck.com
meg.fasulo@bartlitbeck.com
jordan.golds@bartlitbeck.com

Nosson D. Knobloch (*Pro Hac Vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
nosson.knobloch@bartlitbeck.com

### B.    Counsel for Kioxia

Michael Hawes

1

Texas State Bar No: 24010761
Roger Fulghum
Texas State Bar No. 00790724
Elizabeth D. Flannery
Texas State Bar No. 24045815
Michael Silliman
Texas State Bar No: 24093152
Jennifer Carter
Texas State Bar No. 24105580
**Baker Botts L.L.P.**
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
Email: michael.hawes@bakerbotts.com
Email: roger.fulghum@bakerbotts.com
Email: liz.flannery@bakerbotts.com
Email: michael.silliman@bakerbotts.com

Email: jennifer.carter@bakerbotts.com
Nolan McQueen
Texas State Bar No. 24125322
**Baker Botts L.L.P.**
2001 Ross Avenue
Suite 900
Dallas, TX 75201-2980
Telephone: (214) 953-6525
Facsimile: (214) 661-4525
Email:  nolan.mcqueen@bakerbotts.com

Mark Siegmund
Cherry Johnson Siegmund James
7901 Fish Pond Road, Suite 200
Waco, TX  76710
Telephone: (254) 732-2242
Email: msiegmund@cjsjlaw.com

## II.    JOINT STATEMENT OF THE CASE

1.    This is an action for patent infringement.  Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338(a).  Subject matter jurisdiction and personal jurisdiction are not disputed for purposes of this action. The Court determined that, under 28 U.S.C. §§ 1391(c) and 1400(b), venue is proper in the Western District of Texas. Dkt. 80.

2

2.      Viasat accuses Kioxia of infringing claim 16 of U.S. Patent No. 8,615,700 ("asserted claim"). Viasat accuses Kioxia of direct infringement. Viasat seeks monetary damages in the form of a reasonable royalty (for past and ongoing infringement), pre-and post-judgment interest, costs, and an award of its fees under 35 U.S.C. §§ 284 and 285.

3.      Viasat also requests a permanent injunction against any ongoing infringement of the '700 patent or, in lieu of an injunction, an ongoing royalty to be set by the Court. For the avoidance of doubt, Viasat requests an injunction and/or an ongoing royalty for any ongoing sales of products accused of infringement in this case as well as any products that are immaterially different from the products accused of infringement in this case.

4.      Kioxia denies infringing the asserted claims. Kioxia denies that Viasat is entitled to any monetary damages interest, costs, or an award of its fees. Kioxia denies that Viasat is entitled to a permanent injunction.

## III.    CONTENTIONS OF THE PARTIES

### A.    Viasat's Contentions

Viasat provides the following statement of contentions without waiver of any claim, response given during discovery, or any opinion expressed by Viasat's experts.

5.      Viasat is the true and correct owner of the '700 patent and holds all rights necessary to bring this action in its own name and recover damages from all past, present, and future infringement.

6.      Viasat contends Kioxia makes, uses, sells, offers for sale, and/or imports products that infringe the asserted claims of the '700 patent. The parties have agreed that Kioxia's products containing the Canopus, Deneb, Elnath, and Olympos1B controllers are representative of Kioxia's accused products.

3

7.      Viasat contends that Kioxia directly infringes (literally or under the doctrine of equivalents) each asserted claim of the '700 patent.

8.      Viasat contends that the asserted claims are valid and enforceable.

9.      Viasat contends that the asserted claims are not invalid for any reason, including under 35 U.S.C. §§ 101, 102, 103, or 112.

10.     Viasat contends that Kioxia intended that its customers and personnel infringe the Asserted Claims.

11.     Viasat contends that it has suffered damages in an amount to be determined at trial that is not less than a reasonable royalty adequate to compensate it for Kioxia's infringement of the '700 patent.

12.     Viasat contends that it is entitled to collect damages for any acts of infringement occurring as of November 29, 2015.

13.     Viasat contends that it should be awarded pre- and post-judgment interest, costs, and any other relief the Court deems equitable and just.

14.     Viasat contends that it is entitled to an award of its attorneys' fees pursuant to 35 U.S.C. § 285, or otherwise permitted by law.

15.     Viasat contends that it is entitled to judgment imposing a mandatory royalty on each and every accused products made, used, sold, offered for sale, and/or imported in the future, or any product made, used, sold, offered for sale, and/or imported in the future that is not colorably different the accused products.

**B.      Kioxia's Contentions**

Kioxia provides the following statement of contentions without waiver of any counterclaim, defense, response given during discovery, or any opinion expressed by Kioxia's experts.

16.    Kioxia contends that it does not infringe (literally or under the doctrine of equivalents) any of the asserted claims of the '700 patent.

17.    Kioxia contends that Viasat is not entitled to any award of damages.

18.    Kioxia contends that Viasat is not entitled to any award of interest, costs, or attorneys' fees.

19.    Kioxia contends that Viasat is not entitled to any future royalty.

## IV.    STIPULATED FACTS

The parties agree to the following stipulated facts. These facts may be read to the jury at any time.

20.    This Court has jurisdiction over the parties and all claims and defenses in this action.

21.    Plaintiff Viasat, Inc. is a corporation based in San Diego, California, and organized under the laws of Delaware.

22.    Defendant Kioxia Corporation is a corporation based in Tokyo, Japan, and organized under the laws of Japan.

23.    Defendant Kioxia America, Inc. is a wholly owned subsidiary of Kioxia Corporation. Kioxia America is a corporation based in San Jose, California , and organized under the laws of California.

24.    The '700 patent, entitled "Forward Error Correction with Parallel Error Detection for Flash Memories," was issued on December 24, 2013.

25.    The patent application leading to the '700 patent was filed on August 18, 2010.

26.    Viasat filed its complaint on November 29, 2021.

27.    Viasat served its complaint on December 7, 2021.

## V.    REPRESENTATIVE PRODUCTS AGREEMENT

28.    Products using Canopus, Deneb, Elnath, and Olympos1B controllers will be representative of all Kioxia's accused SSD products, based on their respective ratio of U.S. sales starting six years prior to the filing of the lawsuit (hereinafter "Sales"). In other words, products using these 4 controllers would be representative of the total Sales of all accused SSD products, and products using each of these 4 controllers would represent a portion of the total accused SSD product Sales in proportion to their revenue relative to the total Sales revenue of accused SSD products with those 4 controllers alone. For example, if accused SSD products containing Canopus comprised 25% of Sales when considering only Sales of accused SSD products containing Canopus, Deneb, Elnath, and Olympos1B controllers, then Canopus would be representative of 25% of the total Sales of all accused SSD products. Likewise, if accused SSD products containing Olympos1B constituted 15% of Sales of products containing the 4 controllers, it would be representative of 15% of the total Sales of all accused SSD products.

29.    To be clear, a product being "representative" means that evidence that products using the representative controller do or do not infringe a given claim will equally indicate that other products for which that product is representative also do or do not infringe that given claim. For example, if accused SSD products containing Canopus constituted 25% of the Sales of the accused SSD products containing the 4 representative controllers, and those accused SSD products containing Canopus are found to infringe, then 25% of the Sales of all of Kioxia's accused SSD products would be considered infringing.

30.    Kioxia agrees that Viasat has not waived or abandoned any claims it may have against SSD products using controllers for which Kioxia has not provided U.S. SSD sales amounts in the present litigation.

6

## VI.    DISPUTED ISSUES OF FACT AND LAW

31.    The parties have disputes of law and fact regarding infringement and damages.  But the parties agree that there are no issues that require separate briefing at this time beyond the motion papers mentioned herein.

1.    Whether Viasat has proven by a preponderance of the evidence that Kioxia directly infringes any of the asserted claims by selling, and/or offering for sale the accused products within the United States and/or importing the accused products into the United States.

2.    Whether Viasat is entitled to damages to compensate for Kioxia's alleged infringement, and, if so, the amount of such damages.

3.    Whether Viasat is entitled to post-verdict damages.

4.    Whether Viasat is entitled to pre-judgment and post-judgment interest and, if so, the dollar amount.

5.    Whether Viasat is entitled to any costs.

6.    Whether Viasat is entitled to an injunction.

7.    Whether this case is exceptional under 35 U.S.C. § 285.

8.    Whether Kioxia is entitled to an order requiring Viasat to pay its costs and attorney fees in defending this action.

## VII.    EXHIBITS

32.    Viasat's Exhibit List and Kioxia's objections thereto are attached as **Exhibit A-1** to Dkt. 191.  Kioxia's Exhibit List and Viasat's objections thereto are attached as **Exhibit A-2** to Dkt. 191. The parties will continue to meet and confer about whether any changes to those exhibits are appropriate. The parties will continue to confer to prepare a Joint Exhibit List.

33.    The parties will continue to meet and confer regarding their respective objections in an effort to resolve all remaining issues and objections prior to presenting them to the Court.

7

34.    Additional procedures about exhibits are outlined below.

## VIII.    WITNESSES

35.    Viasat's list of witnesses that will be called and may be called to testify at trial (either live or by deposition) is attached as **Exhibit B-1** to Dkt. 191.  Kioxia's list of witnesses that will be called and may be called to testify at trial (either live or by deposition) is attached as **Exhibit B-2** to Dkt. 191.

36.    The parties agree to exchange updated versions of **Exhibits B-1** and **B-2** no later than two weeks before the start of trial. The parties also agree that, after then, a party will promptly inform the other side if any witness will be removed from its will-call list. Additional procedures about witnesses are outlined below.

## IX.    DEPOSITION DESIGNATIONS

37.    Viasat's deposition designations with Kioxia's objections and counter-designations and Viasat's objections and counter-counter designations are attached as **Exhibit C-1** to Dkt. 191. Kioxia's deposition designations with Viasat's objections and counter-designations and Kioxia's objections and counter-counter designations are attached as **Exhibit C-2** to Dkt. 191. The parties will continue to meet and confer about whether any changes to those exhibits are appropriate.

38.    The parties have agreed not to exchange deposition designations with respect to witnesses who appear on the parties' will-call lists. In the event that a witness is removed from a party's will-call list, the opposing party will have the opportunity to designate testimony from that witness. The parties agree that they will cooperate to set reasonable deadlines to exchange deposition designations in that event.

39.    Additional procedures related to calling a witness by deposition are outlined below.

## X.    PROCEDURAL STIPULATIONS AND TRIAL DISCLOSURES

40.    The following stipulations were agreed upon by the parties, as discussed below, and are made a part of this Pretrial Order.

41.    The parties agree to the following procedure which will govern the disclosure of exhibits, witnesses, deposition testimony, and demonstratives to use at trial and the process to identify any objections remaining between the parties with regard to these disclosures:

### A.    Motions

42.    All motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) may be brought to the Court orally or in writing, at any time before the jury begins deliberations. Unless the Court sets alternative deadlines, all oppositions to motions filed pursuant to Fed. R. Civ. P. 50(b) must be filed within 28 days of the filing of the motion. All replies in support of the motions must be filed within 21 days of service of any oppositions. The parties reserve their right to seek reasonable extension of these deadlines subject to the Court's approval.

### B.    Exhibits

43.    The Exhibit Lists set forth the parties' exhibits they intend to offer into evidence, except for impeachment exhibits that may or may not be introduced into evidence.

44.    The parties' exhibit lists include exhibits that may not necessarily be introduced into evidence. A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial. The parties reserve the right to use or offer exhibits for purposes of impeachment that are not included in the Exhibit Lists. Each party reserves the right to add additional exhibits to its exhibit list, for good cause shown, by agreement of the parties, or as ordered by the Court.

45.    The parties will provide to each other's counsel of record via email a written list of any exhibits, by exhibit number, to be used with each witness that it intends to call by way of direct

9

examination by 6:00 pm CT two calendar days in advance of when the witness is expected to be called.  Any remaining objections to the identified exhibits shall be provided no later than 8:00 pm CT the same day. The parties shall meet and confer in an attempt to resolve any objections to the exhibits beginning on or before 10:00 pm CT the day the objections are provided.  The parties will continue in good faith to meet and confer regarding exhibits and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to the introduction of the exhibit. Failure to comply with these procedures, absent an agreement by the parties, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

46.     No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence by exhibit number. Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so. Documents shown to a witness for impeachment may be displayed to the jury even if not offered for admission into evidence.

47.     The parties may use each other's exhibits listed on the parties' respective exhibit lists attached hereto to the same effect as though it were on its own exhibit list, subject to all evidentiary objections.  However, another party's exhibit is not admissible by virtue of being on an exhibit list or over an objection; a party seeking to introduce another party's exhibit must still have a witness sponsor the exhibit into evidence as described above subject to any objections. The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit should the opposing party attempt to offer it into evidence. In other words, a party

10

does not waive its objections to an exhibit by including that exhibit on its own exhibit list, or by the exhibit's inclusion on the joint exhibit list. Any exhibit, once admitted, may be used equally by each party.

48.    The parties agree that they will not identify exhibits to be used with any witness only on cross examination. Documents, deposition transcripts, or portions thereof, or other items, not specifically identified on the parties' Exhibit Lists or offered into evidence, may still be used at trial for purposes of impeachment or rehabilitation if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.

49.    The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

50.    The parties agree that any date listed on the exhibit list is not evidence of nor an admission of the date of the document, and that failing to list a date is neither evidence of nor an admission of whether the document is dated.

51.    Legible copies of United States patents, the file prosecution histories of United States patents, and USPTO assignment records may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies. [**KIOXIA PROPOSAL:** With respect to U.S. Patent No. 8,615,700, the copy of U.S. Patent No. 8,615,700 that may be used during the trial of the case is the version of U.S.

Patent No. 8,615,700 available for download from the United States Patent and Trademark Office at patentcenter.uspto.gov.][1]

52.     For exhibits that are Excel spreadsheets, PowerPoint presentations, images, video files, or other electronic files, the parties may use electronic versions of such exhibits in their native format. For demonstratives, the parties may copy and paste portions from original native versions of exhibits that are included on the parties' exhibit lists.

53.     The parties will use their best efforts to ensure that only one version of a copy of a document is admitted into evidence.

54.     The parties agree that they will not dispute the authenticity of any document that was produced during discovery, which on its face appears to have been authored by an employee, officer, or agent of the producing party in the ordinary course of business, and that such documents shall be deemed prima facie authentic, subject to the right of the party against whom such a document is offered to adduce evidence to the contrary or to require the offering party to provide authenticating evidence if the opposing party has a reasonable basis to believe the document is not authentic and subject to any contrary determination or ruling by the Court. The parties also stipulate that such documents are subject to the business-record exception.

55.     A number of the documents that Kioxia has produced in this case are written in Japanese. The parties will use their best efforts to agree on a single translated version of each Japanese-language document on the parties' exhibit lists to admit into evidence. Viasat and Kioxia have worked together to coordinate on the proposed machine translations of certain Japanese-

---

[1] **VIASAT POSITION:** The copy of the patent used during trial should not reflect any of the decisions of the PTAB on the various IPRs, in line with Standing MIL 6. **KIOXIA POSITION**: As an exhibit entered into evidence the copy of the patent should be the actual public record, not a replaced record, in accordance with Fed. R. Evid. 803(8).

language documents. If Viasat accurately implements all of Kioxia's proposed corrections and clarifications to these documents, Kioxia will not object to the translation of these documents, although Kioxia reserves all rights with regard to any other evidentiary objections. Kioxia reserves its rights to object to the translation of any other documents.

### C.    Witnesses

56.    Witnesses who were not on either parties' witness list at the time of the April 2024 Pre-Trial Conference will not testify absent good cause shown.

57.    No later than 6:00 pm CT two calendar days before their introduction (e.g., by 6:00 pm CT on Tuesday for witnesses appearing on Thursday), counsel shall provide to opposing counsel the names and order of witnesses to be called and whether live or by deposition. Except that Kioxia may disclose its first witness(es) no later than 7:00 pm CT the day that Viasat discloses the last witnesses in its case in chief. For example, if Viasat discloses the last witness it intends to present in its case-in-chief on Sunday (to be called on Tuesday), then Kioxia will disclose any witnesses it intends to call on Tuesday by 7:00 pm CT on Sunday. Each party shall update its list of expected witnesses and exhibits by 6:00 pm CT at the end of each trial day.

58.    Subject to the process described in this paragraph, any witness who will be made available to testify live in Court will be called live only [**VIASAT PROPOSAL**: once. To the extent that Viasat calls any Kioxia witness adversely during its case in chief, Kioxia will present that witness's testimony at that time, and will not be limited to the scope of Viasat's adverse direct.] [**KIOXIA PROPOSAL**: in the case-in-chief of the party with whom the witness is affiliated.][2] For the avoidance of confusion, for purposes of all disclosures discussed herein, an adverse direct

---

[2] **KIOXIA POSITION**: Kioxia's language reflects the exact agreement the parties filed as part of the Joint Pre-Trial order on February 29, 2024. There is no basis for Viasat to terminate that agreement unilaterally.

shall be treated as a cross-examination, and the friendly cross shall be treated as a direct examination.] This agreement does not limit any party's ability to use the otherwise admissible deposition testimony (including video) of any witness at any time, even if that same witness will also testify live or has already testified live. If Viasat does not call a witness whom Viasat identified as expecting to call live, Kioxia can call that person live (if available) or by deposition testimony in its case.

59. In the absence of an alternative agreement between the parties, fact witnesses to be called for live testimony shall be sequestered and may not be present in the courtroom during witness testimony until after they provide their live testimony, have been excused, and will not testify again at the trial. Fact witnesses shall not review the transcripts of the trial testimony of other fact witnesses. This provision does not apply to one designated corporate representative for Viasat and one designated corporate representative for Kioxia, who will be permitted to attend the entire trial. Expert witnesses and a party's corporate representative need not be sequestered and may be present in the courtroom during trial and/or review transcripts of trial testimony.

### D. Deposition Testimony

60. For any witnesses whose testimony a party intends to present by deposition, the parties shall identify a list of deposition designations to be played or read to the jury by 6:00 pm CT five calendar days before the designations are to be played or read to the jury. Any objections, counter-designations, and any affirmative designations shall be provided no later than 6:00 pm CT the following day (four calendar days before the witness will be called by designation). Any objections to counter-designations, counter-counter designations for its initial affirmative designations, and any counter-designations to the affirmative designations of the opposing party shall be provided no later than 6:00 pm CT the following day (three calendar days before the witness will be called by deposition). No later than 8:00 p.m. the same day (three calendar days

14

before the witness will be called by deposition), the opposing party shall provide any counters-to-counter designations to its affirmative designations, along with any objections to the counter-designations of the party calling the witness. The parties shall meet and confer at 10:00 p.m. that same day (three calendar days before the witness will be called by deposition).

61.    The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony, minus attorney objections and colloquy, and provide a final version of the deposition testimony excerpts (testimony clip report) to the other party by 6:00 p.m. two days before it is to be shown to the jury. The parties shall meet and confer on or before 10:00 pm CT two days before the deposition testimony is to be shown to the jury in an attempt to resolve any objections to the deposition. The parties will continue in good faith to meet and confer regarding the proposed deposition testimony and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the proposed testimony.

62.    Failure to comply with these procedures, absent an agreement by the parties, will result in waiver of the use of the deposition testimony or waiver of objection to the deposition testimony.

63.    Deposition video will include subtitles of the testimony at the bottom of the screen that matches the witness's testimony. For translated testimony, the testimony will be edited to show only the English language question, the native language answer, and the English translation of the answer (with synchronized subtitles). The designating party will identify the translation of the answer to be displayed with the deposition answer when submitting their designations in accordance with above paragraphs.

15

64. When a witness's deposition is played or the witness's prior testimony is read into evidence, the non-sponsoring side will present its designations from the same witness at the same time. If a party designates deposition testimony, and the other party counter-designates, all deposition testimony will be read or played by video in chronological order. The above chronological order requirement for deposition testimony does not apply to the use of deposition transcripts or deposition video for impeachment. Regardless of whether deposition testimony is read or played by video, the time for each party's designated portions will be charged to the designating party.

65. All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

66. In order to reduce the number of duplicative exhibits, where a deposition excerpt refers to a document by exhibit number and that identical document was also marked as a different exhibit number, a party may substitute the trial exhibit for the deposition exhibit.

67. Notwithstanding the above, deposition and other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose. The Court will rule at trial on any objections based on lack of completeness and/or lack of inconsistency.

**E.      Demonstrative Exhibits**

68. Demonstrative exhibits that the parties intend to use at trial need not be included on the parties' respective exhibit lists. Viasat's demonstrative exhibits will be identified by numbers prefixed with "PDX." Kioxia's demonstrative exhibits will be identified by numbers prefixed with "DDX."

69. The parties shall exchange copies of all documentary, graphic, slide, animation, video, and any other form of demonstratives, such as prototypes or physical demonstratives, that

16

they plan to use at trial during direct examination, but not for cross-examinations, by 6:00 pm CT two calendar days before their anticipated use. Any objections to the demonstrative exhibits shall be provided by 8:00 pm CT that same day.  The parties shall meet and confer in an attempt to resolve any objections to the demonstratives at or before 10:00 pm CT the day the objections are provided.  The parties will continue in good faith to meet and confer regarding the proposed demonstratives and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the proposed testimony.

70.    Where a demonstrative refers to information found in an exhibit, the party offering the demonstrative shall disclose to the other party all exhibits that form the basis of the demonstrative at the same time the party discloses the demonstrative.

71.    The party seeking to use demonstrative exhibits will provide a color representation of the demonstrative exhibits to the other side in PDF form in their order of intended use. However, for video animations, the party seeking to use the demonstrative will provide it to the other side on a DVD, CD, or an external drive or make it available via a secure file share. For physical demonstrative exhibits, the party seeking to use the demonstrative will provide a color representation as an 8.5" x 11" PDF document. For physical demonstratives for which a color representation as a PDF is not feasible, the party must identify it in writing with specificity by the 6:00 p.m. deadline and, upon request, make it available for inspection no later than the 8:00 p.m. deadline for objections.

72.    The provisions in this section (E) do not apply to demonstratives created during testimony, demonstratives created live in court, or demonstratives to be used for cross-examination, none of which need to be provided to the other side in advance of their use. In

addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

73.     Failure to comply with these procedures, absent an agreement by the parties, will result in waiver of the use of a demonstrative or waiver of objection to the demonstrative.

### F.    Disclosures for Opening Statements

74.     Any demonstratives to be used during opening statements are to be exchanged by 6:00 pm CT two calendar days before the opening statements.  Any physical demonstratives, including any poster boards, must be shown at the same time and made available for inspection by the same time if requested.  By no later than noon CT the following day, the receiving party shall notify the other party of any objections to the proposed demonstratives.  By no later than 3:00 pm CT that same day, counsel shall meet and confer to resolve any objections regarding the opening statements.  The parties will continue in good faith to meet and confer regarding the proposed demonstratives and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the opening statements. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative or waiver of objection to the demonstrative.

75.     If a party intends to use an exhibit during its opening statement to which the other party has objected, the party shall disclose the exhibit(s) by 6:00 pm CT two days before opening statements. If the opposing party continues to object to any such exhibit(s), it will provide any objections by noon the following day. The parties are to meet and confer to resolve any objections to these exhibit(s) at 3:00 pm CT the day before opening statements. If good faith efforts to resolve objections to exhibits to be used in opening statements fail, the objecting party shall promptly bring its objections to the Count's attention after the meet and confer. Failure to comply with these

procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

76.    As with the section above, the provisions in this section (F) do not apply to demonstratives created live in court, which do not need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

77.    [**VIASAT PROPOSAL**: Both parties' opening statements will be given at the outset of the trial. To the extent that Kioxia is permitted to present its opening statement after Viasat rests its case in chief, it should follow the same disclosure rules that have been in the pretrial order for more than two years.][3] [**KIOXIA PROPOSAL:** Notwithstanding any of the above, because Kioxia will reserve its opening statement until the conclusion of Plaintiff's case-in-chief, the foregoing deadlines shall not apply with respect to Kioxia's opening statement.  Instead, Kioxia will coordinate with Viasat in good faith so that Viasat has a sufficient opportunity to review any demonstratives (including physical demonstratives) and any exhibits to which Viasat has an unresolved objection in advance of Kioxia's opening statement and raise any objections for resolution by the Court.]

### G.    Discovery Responses

78.    If a party proposes to read a statement by a party opponent from any request for admission responses or interrogatory responses, they will provide notice at least by 6:00 p.m. [**VIASAT PROPOSAL**: one day] [**KIOXIA PROPOSAL**: two days] before the statement is

---

[3] **VIASAT POSITION**: Viasat's language reflects the agreement the parties filed as part of the Joint Pre-Trial order on February 29, 2024. Dkt. 191. There is no basis for Kioxia to terminate that agreement unilaterally.

intended to be used at trial. This notice provision does not apply when a party intends to use the statement during cross-examination or for impeachment purposes.

**H.      Order of Presentation**

79.      This matter is scheduled for a 5-day jury trial beginning at 9:00 am CT on July 13, 2026. The trial will be timed. Unless otherwise ordered, time will be charged to a party for its direct and redirect examinations of witnesses it calls, its cross-examination of witnesses called by any other party, its argument on any motions for judgment as a matter of law, and all sides' arguments on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

80.      The Court has allocated 10 hours per side, excluding voir dire, opening statements, and closing arguments. Dkt. 210 at 5. The order of presentation of evidence will be as follows.

**a.      Opening Statements**

81.      [**VIASAT PROPOSAL:** The trial presentations shall begin with opening statements by each party. Plaintiff shall present its opening statements first, followed by Defendants' opening statements.][4] [**KIOXIA PROPOSAL:** The trial presentations shall begin with an opening statement by Viasat. Kioxia will present their opening statement immediately after Plaintiff has rested.] The parties will adhere to the time limits set for opening statements set by the Court.

**b.      Evidence**

82.      The parties agree that, unless the Court orders otherwise, the order of the presentation of evidence will follow the burden of proof, except to the extent that a witness must

---

[4] **VIASAT POSITION**: Viasat's language reflects the exact agreement the parties filed as part of the Joint Pre-Trial order on February 29, 2024. Dkt. 191. There is no basis for Kioxia to terminate that agreement unilaterally.

be taken out of order due to scheduling issues of the witness (in which event the parties will meet and confer and propose appropriate adjustments as needed).  Viasat shall present its case first on the issue of infringement and damages.  Kioxia may then present its response on infringement and damages.

### c.      Closing Arguments

83.      After Kioxia completes the presentation of its case-in-chief, the parties shall conclude with closing arguments. [**VIASAT PROPOSAL:** Viasat shall have the option to reserve time for closing statement to respond to Defendants' closing, not to exceed 1/3 of the allotted closing time.][5]

### I.      Agreed Juror Notebooks

84.      The parties agree that jurors be permitted to write notes in the provided Juror Notebooks during the presentations of the parties and that jurors be permitted to bring these notes into the deliberation room. The parties propose that the juror's notes be collected by the clerk each evening after the jury has been excused, and collected and destroyed without review after the jury is discharged.

85.      Copies of an agreed Juror Notebook will be provided to the Court containing: the '700 patent; the asserted claim; the Court's claim constructions; and blanks pages for the juror to take notes. Viasat will print the Juror Notebooks and make them available for Kioxia's review by noon CT two days before opening statements.

86.      The parties also agree that each will prepare a document with the picture and name of each witness to be called to testify in person or by deposition. Each party shall be responsible

---

[5] **VIASAT POSITION**: Viasat's language reflects the exact agreement the parties filed as part of the Joint Pre-Trial order on February 29, 2024. Dkt. 191. There is no basis for Kioxia to terminate that agreement unilaterally.

for preparing the document, which shall consist of six color images and names of witnesses per page. The parties agree to exchange the witness pictures by 6:00 pm CT two days before opening statements.

## XI.    PROPOSED JURY INSTRUCTIONS

87.    The parties' joint and disputed proposed preliminary jury instructions are attached as **Exhibit G**.

88.    The parties' joint and disputed proposed jury instructions are attached as **Exhibit D-1** to Dkt. 191 and the joint and disputed proposed charge instructions are attached as **Exhibit D-2** to Dkt. 191. The parties will continue to meet and confer about whether any changes to those exhibits are appropriate.

89.    The parties request that that the Court present the tutorial video from the Federal Judicial Center regarding the U.S. Patent Office to the members of the jury as part of its preliminary instructions to the jury. [**KIOXIA PROPOSAL:** but only if the video presented to the jury is edited to remove references to invalidity issues.  The parties understand that the Court shows the video to the entire jury pool immediately before jury selection begins, and the parties will coordinate with Hon. Dan MacLemore on the version of the video to be shown to the jury pool. *See* https://www.fjc.gov/publications/patent-process-overview-jurors.]

## XII.    LIST OF PENDING MOTIONS

The following motions by Viasat remain pending:

- Viasat's Motion to Exclude Untimely Opinions Regarding Alleged Non-Infringing Alternatives (Dkt. 231)

The following motions by Kioxia remain pending:

- Kioxia's Renewed Motion to Exclude Certain Opinions of Dr. Mody and Mr. Doller (Dkt. 226)

## XIII.  VOIR DIRE

90.    The parties' jointly proposed voir dire is attached as **Exhibit E** to Dkt. 191. The parties will continue to meet and confer about whether any changes to that exhibit are appropriate.

## XIV.  VERDICT FORM

91.    The parties' jointly proposed verdict form is attached as **Exhibit F** to Dkt. 191. The parties will continue to meet and confer about whether any changes to that exhibit are appropriate.

Dated: June 24, 2026

*/s/ Meg E. Fasulo*
Melissa R. Smith, State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

James Travis Underwood
State Bar No. 24102587
GILLAM & SMITH, LLP
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
travis@gillamsmithlaw.com

J. Scott McBride (*Pro Hac Vice*)
Matthew R. Ford (*Pro Hac Vice*)
Nevin M. Gewertz (*Pro Hac Vice*)
Meg Fasulo (*Pro Hac Vice*)
Jordan G. Golds (*Pro Hac Vice*)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
scott.mcbride@bartlitbeck.com
matthew.ford@bartlitbeck.com
nevin.gewertz@bartlitbeck.com
meg.fasulo@bartlitbeck.com
jordan.golds@bartlitbeck.com

Nosson D. Knobloch (*Pro Hac Vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
nosson.knobloch@bartlitbeck.com

*Counsel for Plaintiff Viasat, Inc.*

Respectfully submitted,

/s/ *Michael Hawes*
Michael Hawes
Texas State Bar No: 24010761
Roger Fulghum
Texas State Bar No. 00790724
Elizabeth D. Flannery
Texas State Bar No. 24045815
Michael Silliman
Texas State Bar No: 24093152
Jennifer Carter
Texas State Bar No. 24105580
Baker Botts L.L.P.
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
Email: michael.hawes@bakerbotts.com
Email: roger.fulghum@bakerbotts.com
Email: liz.flannery@bakerbotts.com
Email: michael.silliman@bakerbotts.com
Email: jennifer.carter@bakerbotts.com

Nolan McQueen
Texas State Bar No. 24125322
Baker Botts L.L.P.
2001 Ross Avenue
Suite 900
Dallas, TX 75201-2980
Telephone: (214) 953-6525
Facsimile: (214) 661-4525
Email:  nolan.mcqueen@bakerbotts.com

Mark Siegmund
Cherry Johnson Siegmund James
7901 Fish Pond Road, Suite 200
Waco, TX  76710
Telephone: (254) 732-2242
Email: msiegmund@cjsjlaw.com

*Counsel for Defendants Kioxia Corporation
and Kioxia America, Inc.*

24

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been sent to all counsel of record via electronic mail on June 24, 2026.


/s/ *Melissa R. Smith*