FINAL EXECUTION COPY

## PATENT LICENSE AND SETTLEMENT AGREEMENT

This PATENT LICENSE AND SETTLEMENT AGREEMENT (this "*Agreement*") is made and effective as of the date of the last signature on this document (the "*Effective Date*"), by and between e.Digital Corporation, a Delaware corporation having its principal place of business located at 16870 West Bernardo Drive, Suite 120, San Diego, California 92127 ("*e.Digital*"), and Toshiba Corporation, a Japanese corporation having its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan ("*Toshiba*").

In this Agreement, Licensor and Licensee (as defined below) may each be referred to individually as a "*Party*" and collectively as the "*Parties*."

### RECITALS

WHEREAS, e.Digital has filed an action against Toshiba America Information Systems, Inc. ("*TAIS*") for infringement of certain patents by certain Defendant Products ("*Accused Products*") in an action entitled *e.Digital Corporation v. Toshiba American Information Systems, Inc.*, Case No. 3:13-cv-2909-H-BGS, pending in the United States District Court for the Southern District of California (the "*Litigation*"); and

WHEREAS, the Parties now desire to settle the Litigation and enter into this Agreement providing for a full, final, complete and global settlement of the subject matter of the Litigation and for certain releases, licenses and covenants not to sue, all on the terms and conditions set forth herein.

In consideration of the mutual covenants and obligations expressed herein, the adequacy and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

### ARTICLE I

### DEFINITIONS; INTERPRETATION

1.1     Certain Definitions.   Capitalized terms used in this Agreement shall have the meaning ascribed to them below or as defined in the preamble or the remainder of the body of this Agreement.

1.2     "*Affiliate(s)*" means, with respect to a Party, any person or entity, directly or indirectly through one or more intermediaries, controlling, controlled by or under common control with such Party, directly or indirectly, as of the Effective Date and thereafter. For purposes of this definition, "control" means the power, directly or indirectly through one or more intermediaries, either to (a) vote fifty percent (50%) or more or, if the maximum percentage of voting stock or securities that a foreign investor may own or possess under local law or regulation is less than fifty percent (50%), such maximum percentage of the securities or beneficial interests as may be owned

*CONFIDENTIAL*
US_ACTIVE-119350525.9

Defendant's
Exhibits

**D190**

or possessed by such person or entity or (b) direct or cause the direction of, the management or policies of such entity, whether through the ownership of voting securities, by contract or otherwise.

1.3     *"Licensee"* means Toshiba and its Affiliates including but not limited to TAIS.

1.4     *"Licensed Patents"* means the list of patents as contained in Schedule "A" and any continuations, continuations-in-part, divisionals, reissues, reexaminations, and foreign counterparts thereof.

1.5     *"Licensed Product"* means any product (including, but not limited to, all categories of products accused of infringement in e.Digital's original and amended complaints) that is made, have made, used, imported, exported, distributed, offered for sale, and/or sold, developed and advertised, or otherwise disposed of by Licensee, which either (i) but for the licenses, provided herein, would directly or indirectly infringe one or more valid claims of the Licensed Patents, (ii) would give rise to a claim for indemnification or defense by a Recipient (as defined in Section 2.2) of the Licensed Products, or (iii) the Licensed Product substantially embodies or practices the claimed invention (i.e., the license and sale of the Licensed Product would exhaust further recovery for damages and/or any other remedy). Nothing in this definition shall be considered as an admission that any Licensed Product does infringe any claim of any Licensed Patent and the Parties acknowledge that reference to infringement, herein, is used for definitional purposes.

1.6     *"Licensor"* means e.Digital and its Affiliates.

1.7     *"Territory"* means every country in the world.

1.8     *"Valid Claim"* means, with respect to each Licensed Patent, a recited claim thereof that has not expired or has not been finally declared invalid or unenforceable by a governmental authority of competent jurisdiction (with no further opportunity for appeal).

1.9     *"Excluded Patents"* means any patents, continuations, continuations-in-part, divisionals, reissues, reexaminations, and foreign counterparts of any patent not defined under "Licensed Patents," above.

1.10    Certain Interpretive Matters.

(a)     All references to $ or dollar amounts will be to lawful currency of the United States of America. All references to "day" or "days" will mean calendar days, unless otherwise noted.

(b)     No provision of this Agreement will be interpreted in favor of, or against, either of the Parties by reason of the extent to which any such Party or its counsel participated in the drafting thereof or by reason of the extent to which any such provision is inconsistent with any prior draft of this Agreement or such provision.

- 2 -                                                    *CONFIDENTIAL*

**190.002**

## ARTICLE II

## LICENSE, RELEASES, AND COVENANTS

2.1     License Grant By Licensor.  Subject to the payment provided in Section 3.1 hereunder, Licensor, on behalf of itself and its Affiliates, hereby grants to Licensee a non-exclusive, irrevocable, worldwide, fully paid-up, perpetual, indivisible license, without the right to sublicense, under the Licensed Patents to: (i) make (including the right to use any apparatus and practice any method to make), assemble, have made, use, operate, perform, test, sell, offer to sell, rent, lease, license, transfer, distribute, import, export and/or otherwise dispose of Licensed Products in the Territory; (ii) practice any method, process or procedure; and (iii) have Licensed Products made by another manufacturer for the use, importation, offer for sale, lease, license, rent, sale and/or other transfer or otherwise have any of the foregoing performed on its behalf by any person or entity.

2.2     Licensor's Release.  Subject to the payment provided under Section 3.1 hereunder, Licensor, on behalf of itself and its Affiliates, hereby fully, unconditionally and irrevocably releases, acquits and forever discharges with prejudice Licensee, its Affiliates and their past, present or future officers, directors, managers, members, shareholders, employees, agents, advisors, experts, consultants, attorneys, partners, representatives, predecessors, heirs, successors, assigns and other transferees, and any suppliers, contractors, distributors, resellers, customers (direct or indirect), end-users, suppliers, manufacturers, assemblers, dealers, OEMs, ODMs and users (collectively, "*Recipients*") from any and all claims, demands, obligations, liabilities, debts, costs, actions, suits (whether in law or in equity), causes of action, liabilities, expenses (including but not limited to attorneys' fees), damages, whether class, individual or otherwise in nature, known or unknown, suspected or unsuspected, whether asserted or that could have been asserted, judgments, liens, and losses and expenses of every kind related to: (i) infringement of the Licensed Patents with respect to the Licensed Products; (ii) the claims and counterclaims asserted in, and the conduct of the, Litigation; and (iii) the conduct of settlement negotiations before the Effective Date (except for representations and obligations expressly included in this Agreement).

2.3     Licensor Covenant Not to Sue.  Subject to the payment provided under Section 3.1, Licensor on behalf of itself and its Affiliates covenants not to sue, assert, threaten, encourage, support assist or join in any action against (i) Licensee or any of its Affiliates for infringement of the Licensed Patents with respect to Licensed Products, nor (ii) Recipients for infringement of the Licensed Patents solely with respect to making, having made, using, importing, exporting, distributing, selling, offering for sale, developing or advertising the Licensed Products or any other act complained of in the Complaint.

2.4     No Other Rights.  Except as expressly set forth in this  Article II or otherwise necessary to exercise the rights granted in this Agreement, no other right or license is granted under this Agreement by Licensor to Licensee, or to any third party, whether expressly, impliedly, by estoppel or otherwise, in, to or under the Licensed Patents or any other technology or intellectual property owned by, licensed to or otherwise in the possession of Licensor or any of its Affiliates or their respective licensees, licensors or other research or development collaborators.

2.5     No Challenge to Validity.  To the extent that the licenses, releases and covenants

- 3 -                                                          *CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                              VIASAT_KIOXIA-0000006377

**190.003**

granted to Licensee is valid, effective and enforceable, Licensee agrees not to challenge, assist or cause any third party to challenge the validity or enforceability of any Licensed Patent during the term of U.S. Patent No. 5,839,108. Notwithstanding the foregoing, Licensees shall have the right to contest the validity or enforceability of the Licensed Patents to the extent (i) a claim of infringement under the Licensed Patents is brought against any Recipient of Licensed Products, or (ii) a claim of indemnification or defense is made to Toshiba by any Recipient of Licensed Products.

2.6     No Obligations. Licensee shall have no obligation or responsibility to maintain, enforce or defend the Licensed Patents in the Territory.

2.7     Licensee Release. Subject to the terms and conditions of and Licensor's compliance with this Agreement and the accuracy of Licensor's representations and warranties, Licensee hereby releases and absolutely discharges e.Digital from any and all actions, causes of action, claims or demands whatsoever in law or equity that are based on any events or actions prior to the date of this Agreement related to: (i) infringement of the Licensed Patents with respect to the Licensed Products; (ii) the claims and counterclaims asserted in, and the conduct of the, Litigation; and (iii) the conduct of settlement negotiations before the Effective Date (except for representations and obligations expressly included in this Agreement).

2.8     Releases. The releases in this Agreement include an express, informed, knowing and voluntary waiver and relinquishment to the fullest extent permitted by law. In this connection, the Parties acknowledge that they may have sustained damages, losses, costs or expenses which are presently unknown and unsuspected and that such damages, losses, costs or expenses as may have been sustained may give rise to additional damages, losses, costs or expenses in the future. The Parties hereto further acknowledge that they have negotiated this Agreement taking into account presently unsuspected and unknown claims, counterclaims, causes of action, damages, losses, costs and expenses. Specifically, each Party hereby expressly waives any rights it may have under California Civil Code Section 1542 (or any other similar law in any jurisdiction), which provides that:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

2.9     For the avoidance of doubt, as with the licenses and covenants contained in this Agreement, it is the intention of the Parties that the aforementioned releases are not intended to release any claims or other causes of action concerning unrelated products and services of unaffiliated third parties and their customers of those products and their services.

## ARTICLE III

## PAYMENTS

3.1     Payment. In consideration of the rights, licenses, releases and covenants granted by Licensor and the dismissal by Licensor of the Litigation hereunder, Toshiba agrees to pay to

*CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

VIASAT_KIOXIA-0000006378

**190.004**

Licensor a total of Three Hundred Fifty Thousand U.S. Dollars and no cents ($ 350,000.00) payable by Toshiba to Licensor within forty-five (45) days of the Effective Date ("*Payment Due Date*") by wire transfer to the following account:

| | |
|---|---|
| Account Name: | e.Digital Corporation |
| Federal Tax Id: | 33-0865123 |
| Account #: | 82213455 |
| ABA#: | 122238200 |
| Swift Code: | FNSDUS6D |
| Bank Name: | Pacific Western Bank |
| Bank Branch Name: | Point Loma Branch |
| Bank Address: | 1661 Rosecrans Street San Diego, CA 92106 USA |
| Bank Phone: | 619.221-4102 |
| Bank Fax: | 619.224-9518 |

For avoidance of doubt, the amount herein represents the total amount payable to Licensor by Licensee for rights, licenses, releases and covenants granted by Licensor and the dismissal by Licensor of the Litigation hereunder. Licensee owes no other payment of any kind whatsoever to Licensor. Upon payment of said amount, the rights, licenses, releases and covenants in this Agreement shall be fully and finally paid-up and irrevocable, forever.

3.2    Costs. Each Party shall bear its own costs and attorneys' fees relating to the Litigation and to the negotiation of this Agreement.

3.3    Taxes.

(a)    Each Party is responsible for reporting and paying its own income taxes, corporate taxes and applicable franchise taxes imposed on such Party as a result of the payments or transactions contemplated by this Agreement.

(b)    The payments specified in Section 3.1 shall be the total amount paid by Licensee, without any additional amounts due or paid as a result of any present and future taxes (including any income taxes, sales taxes, use taxes, stamp taxes, value added taxes, property taxes and all other taxes, duties or imposts) that may be imposed by any taxing authority on or in relation to this Agreement.

(c)    Any tax imposed by Japanese taxing authorities with respect to payments payable by Licensee to Licensor under this Agreement ("*Withholding Tax(es)*") shall be borne by Licensor, and Licensee may deduct such Withholding Taxes from the payments and pay the remaining amount after deduction unless the appropriate tax forms and other documentation necessary to claim a tax exemption for such Withholding Taxes against the Japanese tax authority under the tax convention between U.S. and Japan and Japanese tax law or regulation ("*Necessary Documents*") are received by Toshiba for filing to the competent Japanese tax authority thirty (30) days prior to the Payment Due Date, and the Japanese tax authority permits payment without withholding. Licensor agrees to cooperate with the Licensee and to complete and provide such appropriate Necessary Documents. If the Japanese tax authority does not approve payment

- 5 -                                                    *CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                                   VIASAT_KIOXIA-0000006379

**190.005**

without withholding, Licensee shall provide Licensor with the withholding receipts to allow Licensor to claim the corresponding tax credits.

3.4    Non-Admission of Liability.    Notwithstanding anything to the contrary, this Agreement consists of a compromise by the Parties and Licensor hereby expressly acknowledges and agrees that this Agreement and any drafts and communications related to this Agreement shall not be treated as an admission of liability or used as evidence by any Party for any purpose other than to enforce the terms of this Agreement. The Parties hereby agree that each Party expressly denies any liability or wrongdoing in connection with the Litigation and that the entry into this Agreement is intended solely as a compromise of disputed claims. A Party's participation in this Agreement, its agreement to any term of this Agreement, the existence or content of any term of this Agreement, and any action taken by a Party pursuant to this Agreement do not constitute and shall not be construed as an admission of liability or as a concession by any Party that any claim or defense asserted by the other Party in connection with the Litigation is valid (and in particular, but without limitation, do not constitute and shall not be construed as an admission of infringement, non-infringement, validity or invalidity, enforceability or unenforceability, value or lack of value, reasonableness of consideration or lack thereof).

3.5    Dismissal of Litigation. Within ten (10) days of Licensor's receipt of the full payment required under Section 3.1, Licensor agrees to file the appropriate pleadings and stipulations to dismiss its suit against TAIS with prejudice, with each party bearing its own attorney's fees and costs. TAIS shall voluntarily dismiss its counterclaims without prejudice pursuant to Fed. R. Civ. P. 41 (a) (1) and (c) at the same time. TAIS will not reassert its voluntarily dismissed counterclaims and/or declaratory judgment claims except in the event it is involuntarily brought into a lawsuit or otherwise required to defend a lawsuit that involves a claim of infringement of Licensed Patents based in any way on the products or use of such products of Toshiba or its Affiliates. The Parties agree that the settlement of the Litigation is intended solely as a compromise of disputed claims, counterclaims, and defenses, and shall not be treated as an admission of liability by any Party for any purpose.

## ARTICLE IV

## CONFIDENTIAL INFORMATION

4.1    No publicity.    Neither Licensor nor Licensee will issue a press release or any other announcement or public statement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing. The Parties shall direct their representatives not to make any disclosures of the terms of this Agreement unless permitted under this Article IV. Without violating the terms of this Article IV, in response to an inquiry from a legitimate third party entitled to such information, either Party may state "The parties have entered into a confidential license agreement."

4.2    Confidentiality.

(a)    Each Party agrees that, during and after the term of this Agreement, it shall not publicize the existence of or otherwise disclose this Agreement, or the terms and conditions hereof, except: (i) with the prior written consent of the other Party; (ii) to its legal or financial

- 6 -                                         *CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                    VIASAT_KIOXIA-0000006380

**190.006**

accounting advisors; (iii) as may be required by law, regulation, court order, discovery request or subpoena, or similar requirement in a legal or regulatory proceeding; (iv) to the extent necessary to enforce this Agreement; (v) in confidence, in connection with an actual or prospective merger or acquisition or similar transaction; or (vi) in confidence, to a potential assignee of any Licensed Patents to allow the assignee to assume obligations under this Agreement. Licensee shall be permitted to inform any Recipient of Licensed Products that such products are licensed to the Licensed Patents, including without limitation all categories of products accused of infringement in e.Digital's original and amended complaints filed in the Litigation. Licensee shall be further permitted to notify any and all defendants in the various e.Digital litigations, that e.Digital is not accusing Flash Memory Storage products, as the term is used in e.Digital's various complaints, sourced from Toshiba and/or its Affiliates in the various e.Digital litigations and inform such defendants as to the scope of the licenses granted in this Agreement, including providing the relevant sections of this Agreement, including sections 1.2-1.6, 2.1-2.3, 4.2(a) and Exhibit A. In the event Toshiba receives a request for indemnification from a Recipient, Licensee shall be permitted to provide the same notice to such Recipient. .

(b)     In the event that a Party is required to disclose this Agreement in response to a court order, discovery request, subpoena, or similar requirement in a legal or regulatory proceeding, the disclosing Party (i) shall give prior written notice to the other Party, including providing the other Party with a copy of the relevant request for production or subpoena, (ii) shall not disclose this Agreement until ten (10) business days after the notification set forth in (i) above, and (iii) shall make best efforts to ensure that the disclosure is pursuant to the highest level of confidentiality, at the extent the confidential status of this Agreement will be preserved, under the applicable protective order or other governing agreement, order, or regulation.

4.3     Securities Regulations. Notwithstanding the foregoing, the terms of this Agreement may, upon prior written notice (after giving the other Party an opportunity to seek relief to prevent disclosure), be disclosed to comply with its financial or securities disclosure obligations under applicable laws and regulations, including the United States or foreign securities laws, SEC regulation or NASDAQ rules. e.Digital represents and warrants that it will not identify this Agreement or any of its terms in any submission to the SEC unless expressly required to do so by the SEC and will request confidential treatment of any such disclosure by the SEC. However, the Parties agree and understand that e.Digital may be or is required to disclose to the SEC that this matter was settled.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES

5.1     Authority. Each Party represents and warrants that as of the Effective Date it has the full right, power and authority to enter into this Agreement and that this Agreement has been duly executed by such Party and constitutes a legal, valid and binding obligation of such Party, enforceable in accordance with its terms.

5.2     No Conflicts. Each Party represents and warrants that the execution, delivery and performance of this Agreement does not conflict with, or constitute a breach or default under any of its charter or organizational documents, any law, order, judgment or governmental rule or

- 7 -                                                           *CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                    VIASAT_KIOXIA-0000006381

**190.007**

regulation applicable to it, or any material agreement, contract, commitment or instrument to which it is a party.

5.3     Licensed Patents.  Licensor represents and warrants that: (i) it is the sole owner of the Licensed Patents and that it has the right to grant the licenses , releases and covenants with respect to the Licensed Patents of the full scope set forth herein; (ii) it is the sole and lawful owner of all right, title, and interest in and to every right, claim and other matter conferred pursuant to this Agreement; (iii) it has not assigned or otherwise transferred to any other person or entity any rights to the Licensed Patents that would prevent Licensor from entering into this Agreement or otherwise prevent Licensee to exercise their rights granted under this Agreement, and Licensor does not purport to assign or transfer, to any person or entity, any claims or other matters herein conferred; and (iv) Licensor has not entered into, and shall not enter into, any other agreements that would interfere or conflict with any of the licenses, covenants, releases or other rights, privileges and immunities granted herein by Licensor.

5.4     Disclaimer of Warranties.  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, LICENSOR LICENSES THE LICENSED PATENTS "AS IS" AND NEITHER PARTY MAKES ANY REPRESENTATIONS AND EXTENDS ANY WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. WITHOUT LIMITING THE FOREGOING, LICENSOR MAKES NO WARRANTY REGARDING THE SCOPE OF THE LICENSED PATENTS OR THAT ANY OF THE LICENSED PATENTS ARE PATENTABLE, VALID, ENFORCEABLE OR THAT ANY PRODUCT COVERED THEREBY WILL BE COMMERCIALLY VIABLE OR SAFE OR NON-INFRINGING.

## ARTICLE VI

## TERM AND TERMINATION

6.1     Term.   This Agreement shall commence on the Effective Date and, unless terminated pursuant to Section 6.2, shall terminate when no Valid Claim of any of the Licensed Patents exists.  At the time of the expiration of the Licensed Patents, the licenses and releases in this Agreement shall remain in effect in perpetuity with respect to the rights granted prior to expiration.

6.2     Early Termination.  Notwithstanding anything in this Agreement to the contrary, in addition to all other remedies available at law or in equity, either Party may earlier terminate this Agreement upon ten (10) business days' prior written notice if the other Party materially breaches this Agreement (e.g., Licensee's failure to pay the full amount due under Section 3.1 or Licensor's assertion of Licensed Patents against Licensed Products or assignment of the Licensed Patents in breach of Section 7.2) and fails to cure such breach within thirty (30) days of written notice thereof. Except for any breach by Licensor of the representations and warranties in  Article V above or the rights granted in Sections 2.1 through 2.3, the Payment shall not be refundable in any event.

6.3     Survival.  In the event of termination pursuant to Section 6.2, the covenants and releases granted to the breaching Party shall terminate as of the date that such termination takes

- 8 -                                                    *CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                        VIASAT_KIOXIA-0000006382

**190.008**

effect and the non-breaching Party shall retain its remedies for such breach, accruing from the date of such breach. The provisions of Articles II (only as applicable to the non-breaching party), III (only as applicable to the non-breaching party), IV, V, VII of this Agreement and this Section 6.3 will survive any termination or expiration of this Agreement.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

7.1     Governing Law; Venue. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of California, without giving effect to the principles of conflict of laws thereof that would result in the application of the laws of any other jurisdiction. Any action brought by either Party for breach of this Agreement, and specifically including any future attempt to enforce the terms of this Agreement , will be filed only in the state or federal courts located in the County of San Diego, California. Notwithstanding the foregoing, either Party shall be entitled to seek temporary and permanent injunctive relief from any court of competent jurisdiction if necessary to prevent immediate, irreparable harm to its interests.

7.2     Assignment.

(a)     Licensee may freely assign or transfer this Agreement, as well as all of its rights and obligations thereunder, without Licensor's consent, to (i) the surviving entity in a merger, sale, consolidation, combination, reorganization or similar transaction or (ii) to an entity that acquires all or substantially all of the assets of Licensee, any of its Affiliates or any of their divisions or business units, including without limitation any business division or subsidiary related to the subject matter of this Agreement, in which event this Agreement shall continue to benefit and obligate Licensee or successor entity and the release and covenant granted may be assigned to such successor entity. Except for the foregoing, this Agreement may not be assigned or otherwise transferred by Licensee without the prior written consent of Licensor which consent shall not be unreasonably withheld or delayed.

(b)     Licensor agrees not to assign, transfer, or otherwise dispose of Licensed Patents to any other entity, unless (i) the acquiring entity agrees in writing to be bound by the license, rights, covenants, and other terms of this Agreement; (ii) the acquiring entity agrees that it, in turn, will require any other party to whom it assigns or licenses the Licensed Patents to agree in writing to be bound by the license, rights, covenants, and other the terms of this Agreement; and (iii) Toshiba receives a copy of the acquiring entity's agreement to be bound.

(c)     Any transfer that does not satisfy the conditions of this Section 7.2 is null and void. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

7.3     Compliance With Laws. Each Party shall comply with all applicable laws and regulations in connection with its performance of its obligations and exercise of its rights under this Agreement. Each Party shall furnish to the other Party any information reasonably requested or required by that Party to enable that Party to comply with this Agreement.

7.4     Severability. In the event that any provision of this Agreement is determined to be

- 9 -                                          *CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                                   VIASAT_KIOXIA-0000006383

**190.009**

invalid or unenforceable by a court of competent jurisdiction, the Parties intend the remainder of this Agreement to remain in full force and effect without said provision. In such event, the Parties shall in good faith attempt to negotiate a substitute clause for any provision declared invalid or unenforceable, which substitute clause shall most nearly approximate the intent of the Parties in agreeing to such invalid provision, without itself being invalid.

7.5    Waivers And Amendments; Preservation Of Remedies.  This Agreement may be amended, modified, superseded, canceled, renewed or extended, and the terms and conditions hereof may be waived, only by a written instrument signed by the Parties or, in the case of a waiver, by an instrument signed by the Party waiving compliance by the other Party. No delay on the part of Licensor or Licensee in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of Licensor or Licensee of any right, power or privilege hereunder, nor any single or partial exercise of any right, power or privilege hereunder, preclude any other or other exercise thereof hereunder. The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies which Licensor or Licensee may otherwise have at law or in equity.

7.6    Headings.  The captions to the several Articles and Sections hereof are not a part of this Agreement, but are included merely for convenience of reference only and shall not affect its meaning or interpretation.

7.7    Bankruptcy.  All releases, licenses, covenants and other rights granted under this Agreement are, for purposes of Section 365(n) of Title 11 of the United States Code ("**Bankruptcy Code**"), licenses of rights to "intellectual property" as defined under Section 101(35A) of the Bankruptcy Code. The Parties agree that Licensee and its Affiliates shall retain and may fully exercise all of their rights and elections under the Bankruptcy Code in the event of a commencement of a case under the Bankruptcy Code, including, without limitation, retaining their rights under and to all such releases, licenses, covenants and other rights as the foregoing existed immediately prior to such commencement.

7.8    Notices.  All notices, requests, demands, claims and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, sent by a nationally recognized overnight courier, by email, or mailed by registered or certified mail (return receipt requested), postage prepaid, to the Parties at the addresses set forth below (or at such other address for such Party as shall be specified by like notice). All such notices and other communications shall be deemed to have been given and received (a) in the case of personal delivery, on the date of such delivery, (b) in the case of delivery by nationally recognized overnight courier, on the second business day following the date when sent, and (c) in the case of mailing, on the fifth business day following such mailing.

**If to Licensor:**

e.Digital Corporation
16870 West Bernardo Drive, Suite 120
San Diego, CA 92127
Tel:  858-304-3016

*CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                          VIASAT_KIOXIA-0000006384

**190.010**

With a copy to:

Anton N. Handal
Pamela C. Chalk
Gabriel G. Hedrick
HANDAL & ASSOCIATES
750 B Street, Suite 2510
San Diego, California 92101
Tel: 619.544.6400
Fax: 619.696.0323
anh@handal-law.com
pchalk@handal-law.com
ghedrick@handal-law.com

**If to Licensee:**

Toshiba Corporation
Attention: General Manager
Intellectual Property Division
Semiconductor & Storage Products Company
1-1, Shibaura 1-chome, Minato-ku,
Tokyo 105-8001, Japan

7.9     Complete Agreement.  This Agreement, together with its Schedules, Exhibits and Appendices specifically referenced herein, and Exhibits constitute the entire agreement, both written and oral, among the Parties with respect to the subject matter hereof, and all prior agreements respecting the subject matter hereof, either written or oral, expressed or implied, are merged and canceled, and are null and void and of no effect.

7.10     Counterparts.  This Agreement may be executed in any number of counterparts; each such counterpart which shall be deemed to be an original instrument and all of which counterparts together shall constitute one instrument. Facsimile signatures or signatures delivered by email in .pdf or similar format will be deemed original signatures for purposes of this Agreement.

7.11     Exhibits.  All exhibits attached to this Agreement are incorporated herein and shall be part of this Agreement for all purposes.

*[Signature Page Follows]*

- 11 -                                           *CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY                VIASAT_KIOXIA-0000006385

**190.011**

FINAL EXECUTION COPY

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized officers, effective as of the Effective Date.

**e.DIGITAL CORPORATION**

By: _Fred Falk_

Name: _FRED FALK,_

Title: _PRESIDENT & CEO_

Dated: _OCTOBER 20, 2014_

**TOSHIBA CORPORATION**

By: _Yasuo Naruke_

Name: _Yasuo Naruke_

Title: _President and CEO Semiconductor & Storage Products Company_

Dated: _October 21, 2014_

Signature Page to
Patent License and Settlement Agreement

*CONFIDENTIAL*

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

VIASAT_KIOXIA-0000006386

**190.012**

FINAL EXECUTION COPY

## SCHEDULE A

### Licensed Patents

U.S. Patent No. 5,787,445, U.S. Patent No. 5,839,108, U.S. Patent No. 5,742,737, U.S. Patent No. 5,491,774 and U.S. Patent No. 5,842,170 together with all continuations, continuations-in-part, divisionals, reissues, reexaminations, and foreign counterparts of any of the aforementioned patents; and all patents issued from applications claiming priority from any of the aforementioned patents.

*CONFIDENTIAL*