**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **VIASAT, INC.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**KIOXIA CORPORATION and KIOXIA AMERICA, INC.,**<br><br>**Defendants.** | **Case No.: 6:21-cv-01231-ADA**<br><br>[redacted] |

**MOTION TO AMEND THE JUDGMENT TO INCLUDE SUPPLEMENTAL DAMAGES, AN ONGOING ROYALTY, PRE-JUDGMENT INTEREST, AND POST-JUDGMENT INTEREST**

# TABLE OF CONTENTS


I. Introduction .......... 1

II. Argument .......... 1

A. The Court Should Award [redacted] Million of Supplemental Damages from March 31, 2026 through Final Judgment .......... 2

B. The Court Should Impose a 3.5% Royalty on Kioxia's Ongoing Sales through the Expiration of the '700 Patent .......... 3

1. The Court Should Set a 3.5% Ongoing Royalty Rate .......... 5

2. The Ongoing Royalty Should Apply to Both the Products Presented to the Jury and Those Not "Colorably Different" .......... 6

C. Viasat Should Receive Pre-Judgment Interest at Its Actual Borrowing Rate .......... 8

1. The Court Should Award Viasat Pre-Judgment Interest .......... 9

2. Viasat's Cost of Borrowing Warrants Awarding Pre-Judgment Interest at Its Actual Borrowing Rate .......... 10

3. In the Alternative, Viasat Seeks the Prime Rate .......... 12

D. The Court Should Award Post-Judgment Interest .......... 13

III. Conclusion .......... 14

# TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)........................................................................................ 6

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008)........................................................................................ 5

*Apple, Inc. v. Samsung Elec. Co., Inc.*,
2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) ................................................................ 4

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
No. 14-cv-62369, 2017 WL 7732873 (S.D. Fla. Jan. 3, 2017),
*aff'd*, 876 F.3d 1350 (Fed. Cir. 2017) ............................................................................ 5

*Barnard v. Theobald*,
721 F.3d 1069 (9th Cir. 2013) ...................................................................................... 13

*Bianco v. Globus Med., Inc.*,
53 F. Supp. 3d 929 (E.D. Tex. 2014)........................................................................... 6, 7

*Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986)................................................................................... 10, 12

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-cv-04738-WHO, 2021 WL 1022854 (N.D. Cal. Mar. 17, 2021) ............................ 6, 7

*DataTreasury Corp. v. Wells Fargo & Co.*,
No. 2:06-cv-72-DF, 2010 WL 5140718 (E.D. Tex. Sept. 27, 2010) ..................................... 13

*DataTreasury Corp. v. Wells Fargo & Co.*,
No. 2:06-CV-72-DF, 2011 WL 8810604 (E.D. Tex. Aug. 2, 2011) ........................................ 5

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
No. 6:11-CV-00210-JRG, 2018 WL 1156284 (E.D. Tex. Mar. 5, 2018).............................. 13

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
697 F.3d 1342 (Fed. Cir. 2012)........................................................................................ 9

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB, 2017 WL 2190055 (E.D. Tex. May 18, 2017) .............................. 12

*Genband US LLC v. Metaswitch Networks Corp.*,
No. 2:14-cv-00033-JRG, 2018 WL 11357619 (E.D. Tex. Mar. 22, 2018)............................... 5

*General Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) ........ 1, 9

*Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*,
No. 6:20-cv-00018-ADA, 2023 WL 2415281 (W.D. Tex. Mar. 8, 2023),
*rev'd on other grounds, Jiaxing Super Lighting Elec. Appliance, Co., Ltd. v. CH Lighting Tech. Co.*, 146 F.4th 1098 (Fed. Cir. 2025) ........ 2, 13

*Lam, Inc. v. Johns-Manville Corp.*,
718 F.2d 1056 (Fed. Cir. 1983) ........ 12

*Mars, Inc. v. Coin Acceptors, Inc.*,
513 F. Supp. 2d 128 (D.N.J. 2007) ........ 10, 11

*NCS Multistage Inc. v. Nine Energy Serv., Inc.*,
No. 6:20-cv-00277-ADA, 2023 WL 149071
(W.D. Tex. Jan. 9, 2023) ........ 1, 10, 12, 13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013), *abrogated in part on other grounds*, *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024). ........ 8

*Ravgen, Inc. v. Lab. Corp. of Am. Holdings*,
No. 6:20-cv-00969-ADA, 2025 WL 284643 (W.D. Tex. Jan. 23, 2025) ........ 3, 13

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
807 F.3d 1311 (Fed. Cir. 2015),
*vacated in part on other grounds*, 137 S. Ct. 954 (2017) ........ 4

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
612 F.3d 1365 (Fed. Cir. 2010) ........ 4

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) ........ 6

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
939 F.2d 1540 (Fed. Cir. 1991) ........ 10, 12

*VLSI Tech. LLC v. Intel Corp.*,
No. 6:21-CV-57-ADA, 2022 WL 1477728 (W.D. Tex. May 10, 2022) ........ 9, 10, 12, 13

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ........ 2

*XY, LLC v. Trans Ova Genetics*,
890 F.3d 1282 (Fed. Cir. 2018) ........ 5

**Statutes**

28 U.S.C. § 1961 .......... 13

35 U.S.C. § 284 .......... 1, 2, 8, 9

## I. Introduction

Viasat sued Kioxia in November 2021 alleging that its flash drives infringe Viasat's '700 patent, which claims a novel forward error correction technology for flash memory. Before trial, the parties agreed to present the jury with evidence of Kioxia's relevant sales between the start of the damages period and March 30, 2026. On July 16, 2026, a jury rendered a unanimous verdict in Viasat's favor: Kioxia infringed Claim 16 of the '700 patent and owes Viasat over $229 million for its infringement through March 30, 2026. Dkt. 295. The Court entered a final judgment on July 31 which "start[ed] the time for filing any post-trial motions," including "motions for pre- and post-judgment interest, an accounting, and ongoing royalties." Dkt. 300.

Accordingly, Viasat now moves the Court to amend the judgment and award it (1) supplemental damages for infringing sales made between March 31 and entry of judgment on July 31, (2) an ongoing royalty through expiration of the '700 patent for Kioxia's continued sale of infringing products and those that are not colorably different, along with an accounting of such sales, and (3) pre- and post-judgment interest.

## II. Argument

The Patent Act specifically provides that a court "shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Under the Patent Act, a patentee should receive "complete compensation" for the defendant's infringement. *See NCS Multistage Inc. v. Nine Energy Serv., Inc.*, No. 6:20-cv-00277-ADA, 2023 WL 149071, at *3 (W.D. Tex. Jan. 9, 2023); *see also General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). In this case, "complete compensation" includes supplemental damages not covered by the jury's verdict, ongoing royalties for Kioxia's continued infringement, and interest.

### A. The Court Should Award [redacted] Million of Supplemental Damages from March 31, 2026 through Final Judgment

"Under 35 U.S.C. § 284, upon a finding of infringement, a prevailing 'patentee is entitled to damages for the entire period of infringement and should therefore be awarded supplemental damages for any periods of infringement not covered by the jury verdict.'" *Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*, No. 6:20-cv-00018-ADA, 2023 WL 2415281, at *18 (W.D. Tex. Mar. 8, 2023) (citation omitted), *rev'd on other grounds, Jiaxing Super Lighting Elec. Appliance, Co., Ltd. v. CH Lighting Tech. Co.*, 146 F.4th 1098 (Fed. Cir. 2025). "Supplemental damages are compensatory in nature and calculated in accordance with the damages awarded in the jury verdict." *Id.* (cleaned up). The Court has "discretion to award damages for periods of infringement not considered by the jury." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012).

Here, the parties agreed before trial to present evidence of Kioxia's sales of the infringing products through March 30, 2026. After trial, Kioxia produced supplemental damages evidence demonstrating that it sold [redacted] worth of the relevant products between March 31, 2026, and entry of judgment on July 31, 2026. Ex. A at ¶ 2, Mody Decl.

As noted above, the Court's final judgment awarded Viasat damages for Kioxia's infringing sales through March 30, 2026. *See* Dkt. 300 at ¶ 5. Because the jury did not have sales information to award damages for the period between March 31 and the date of the final judgment, July 31, the final judgment is incomplete. The Court should therefore grant Viasat [redacted] in damages, reflecting a 3.5% royalty applied to the [redacted] in infringing sales Kioxia made during the supplemental period. Ex. A at ¶ 2, Mody Decl.; *id.* at Ex. 4, Mody Schedule.

Through its verdict, the jury implicitly imposed a 3.5% royalty rate for damages. Dr. Nisha Mody testified "that the ultimate reasonable royalty" for Kioxia's infringement "should be 3.5

percent," "which amounts to $229,025,021." Ex. B, Trial Transcript (Day 2) at 463:5-8. That is the *exact* amount of damages the jury ultimately awarded. Dkt. 295 at 3; *see also* Ex. A at ¶ 2, Mody Decl. Dr. Mody explained that the 3.5% rate is supported by three different approaches. First, she considered the cost to Kioxia "to design around the patented technology." Ex. B, Trial Transcript (Day 2) at 429:21-25. Second, she looked at "comparable licenses to figure out what Kioxia would pay to Viasat for use of that technology." *Id.* at 430:3-5. And third, she analyzed "the actual benefit Kioxia is realizing using Claim 16 of the patent invention." *Id.* at 430:8-10. Each of these approaches informed Dr. Mody's view of the hypothetical negotiation that would have taken place on December 24, 2013, and led to her ultimate opinion that a reasonable royalty rate for Kioxia's infringement is 3.5%. *See id.* at 433:20-437:1.

Now that the jury accepted Dr. Mody's analysis, the Court should apply that same royalty rate to Kioxia's relevant sales and award [redacted] million in supplemental damages, a natural extension of the jury's damages finding to sales that the jury was unable to consider for itself. Ex. A at ¶ 2, Mody Decl.; *id.* at Ex. 4, Mody Schedule.

### B. The Court Should Impose a 3.5% Royalty on Kioxia's Ongoing Sales through the Expiration of the '700 Patent

Since trial, Kioxia continues to sell significant quantities of infringing products. Meanwhile, the '700 patent remains in force until 2032. In these circumstances, courts generally impose an ongoing royalty on the infringer's future sales to compensate the patentee for continuing infringement.

"Although an ongoing royalty is not automatic, 'the Federal Circuit has indicated that a prevailing patentee should receive compensation for any continuing infringement.'" *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA, 2025 WL 284643, at *1 (W.D. Tex. Jan. 23, 2025). "Accordingly, the Federal Circuit has repeatedly approved the practice of granting

ongoing royalties to compensate a patentee for continuing infringement." *Apple, Inc. v. Samsung Elec. Co., Inc.*, 2014 WL 6687122, at *9 (N.D. Cal. Nov. 25, 2014) (citations omitted). So long as the jury did not award damages intended to cover both past and future infringement, a patentee should receive an ongoing royalty for continuing infringement through the expiration date of the patent. *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("An award of an ongoing royalty is appropriate because the record supports the district court's finding that Telcordia has not been compensated for Cisco's continuing infringement.").

Here, there can be no doubt that the jury did not award damages for future infringement. The jury expressly rejected Kioxia's request for a "lump-sum payment covering all past and future use" and instead awarded Viasat a running royalty solely for "past infringement through March 30, 2026":

> Question No. 2(b): Is the amount you wrote above a running royalty meant only to compensate for Kioxia's past infringement through March 30, 2026, or instead a one-time lump sum payment covering all past and future use?
>
> (Check ONLY one of the following)
>
> Lump Sum Royalty ______ Running Royalty ✓

Dkt. 295 at 4. *See also* Ex. A at ¶¶ 3-4, Mody Decl.

In other words, the jury's verdict expressly leaves Viasat uncompensated for Kioxia's infringement beyond March 30, and it is therefore appropriate for the Court to exercise its discretion to impose an ongoing royalty for Kioxia's infringement after final judgment. *See SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 807 F.3d 1311, 1332 (Fed. Cir. 2015), *vacated in part on other grounds*, 137 S. Ct. 954 (2017) ("[E]quity normally dictates that courts award ongoing royalties.").

### 1. The Court Should Set a 3.5% Ongoing Royalty Rate

In awarding an ongoing royalty rate, the Court "has the discretion to award a royalty rate higher than the jury's implied royalty rate." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-00033-JRG, 2018 WL 11357619, at *15 (E.D. Tex. Mar. 22, 2018). That is because "damages for past infringement are separate and distinct from damages for future acts of infringement and may require different royalty rates given the change in the parties' legal relationship, among other factors." *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72-DF, 2011 WL 8810604, at *6 (E.D. Tex. Aug. 2, 2011).[1] Importantly, "the jury's reasonable rate for past damages *sets the floor* for the determination of an ongoing royalty rate. Therefore, the ultimate rate set by the Court will necessarily be equal to, or exceed the rate for past damages." *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-cv-62369, 2017 WL 7732873, at *2 (S.D. Fla. Jan. 3, 2017) (emphasis added), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017); *see also XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297-98 (Fed. Cir. 2018) (vacating ongoing royalty rate lower than jury's royalty rate).

As discussed above, the jury's award adopted Viasat's proposed 3.5% running royalty rate for past infringement. Dkt. 295 at 4. *See also* Ex. A at ¶¶ 3-4, Mody Decl. That rate sets the floor for the ongoing royalty. And while the Court has discretion to award a higher rate in these circumstances—for instance, post-judgment infringement is now willful because Kioxia knows it

---

[1] For instance, the Federal Circuit has explained that "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361 (Fed. Cir. 2008). "Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." *Id.* at 1362.

is infringing and continues to infringe anyway[2]—Viasat believes an ongoing 3.5% royalty is reasonable in these circumstances. *Id.* at ¶¶ 6-8. Viasat thus requests that the Court simply impose the same royalty rate that the jury awarded.

**2. The Ongoing Royalty Should Apply to Both the Products Presented to the Jury and Those Not "Colorably Different"**

Kioxia uses the infringing features in products that were the subject of discovery in this case and thus adjudicated at trial. On information and belief, Kioxia also uses the infringing features in later products that were not the subject of discovery in this case. The Court should order Kioxia to pay ongoing royalties both for products adjudicated by the jury to infringe as well as products not colorably different from those found to infringe. *See Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 942 (E.D. Tex. 2014) ("An order basing ongoing royalty payments on future sales of those three products implicitly extends to any products that are not colorably different from those products."). The Court should also order an accounting to quantify the value of Kioxia's sales of these additional products.

The "colorable differences" test focuses on whether there are any material differences between the features found to infringe and the features of any newly accused products. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011). Although *TiVo* was decided in the context of an injunction, courts have routinely applied the same reasoning to ongoing royalty orders. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO, 2021 WL 1022854, at *6 (N.D. Cal. Mar. 17, 2021) (collecting cases applying the "colorable differences" test in the ongoing royalty context). Injunctions and ongoing royalties both serve to remedy

[2] *See, e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012) (explaining that "there has been a substantial shift in the bargaining position of the parties" because Kioxia has now "been adjudicated to infringe.").

ongoing infringement after an infringement finding. "Because adjudged infringers cannot skirt injunctions with 'new products' that are, in reality, just the same infringing products in all meaningful ways, they should not be able to skirt ongoing royalties under the same theory." *Id.*; *see also Bianco*, 53 F. Supp. 3d at 942 (adjudged infringer "cannot avoid its royalty obligations simply by renaming its products or making some trivial and immaterial change in the products").

Here, the jury found that Kioxia's solid-state drive products containing the Canopus, Deneb, and Elnath controllers infringe Viasat's '700 patent. Dkt. 295 at 2. Each of those products includes two key features about which the jury heard extensive testimony—QSBC and variable ECC. QSBC is the error detection and correction technique that Kioxia implements in hardware in the infringing devices. *See, e.g.*, Ex. C, Trial Transcript (Day 1) at 184:22-185:8 ("So Toshiba . . . they call the error detection and correction technique QSBC that they -- that are utilized on the SSD products. So generally, they call it QSBC. It's the general algorithm that is implemented in hardware on their SSD devices. . . . The QSBC methodology is used in all three [infringing products]."), 186:1-6. As Kioxia's counsel explained to the jury, "the error correction system that we use [] is called QSBC." Ex. B, Trial Transcript (Day 2) at 524:6.

Variable ECC is the specific feature of the infringing products that meets all of the limitations of Claim 16. As Dr. Hassoun explained, Kioxia's "variable ECC" enables its products "to strengthen the ECC by adding more bits" when "the bit error rate gets worse." Ex. C, Trial Transcript (Day 1) at 193:5-194:16. This feature "does infringe Claim 16." *Id.* at 195:20-23; 245:3-247:8. Kioxia's infringing "variable ECC" feature is used in all three representative products. *See*

*id.* at 251:15-22 (explaining that, with "variable ECC" in Deneb, "the coding rate is modified just like Canopus"); 253:7-254:7 ("Same for Elnath.").[3]

The jury concluded that the three representative products—Canopus, Deneb, and Elnath—infringed Claim 16 based on their use of QSBC and variable ECC. It follows, therefore, that any other Kioxia products that utilize both QSBC and variable ECC also infringe Claim 16. Following the close of discovery in this case, Kioxia has released new controllers which, on information and belief, similarly include both QSBC and variable ECC. Other Kioxia products that include controllers implementing both QSBC and variable ECC will not be colorably different from the solid-state drive products containing the Canopus, Deneb, and Elnath controllers that the jury found to infringe.[4]

Viasat asks the Court to order ongoing royalties against Kioxia for continuing infringement of the products addressed at trial and any other products not colorably different from them. To facilitate payment, Viasat requests that the Court order an accounting on a quarterly basis through the life of the '700 patent. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1380 & n.10 (Fed. Cir. 2013) (collecting cases), *abrogated in part on other grounds*, *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024).

### C. Viasat Should Receive Pre-Judgment Interest at Its Actual Borrowing Rate

Congress provided pre-judgment interest to compensate prevailing parties in patent litigation. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement . . . together with interest and costs as fixed

[3] Kioxia sometimes refers to this feature as "cluster crush." *See id.* at 246:25-247:8 ("cluster crush" and "variable ECC" are "the same thing.").

[4] To the extent that Kioxia claims that products incorporating these two features *are* colorably different, Viasat requests limited discovery into the operation of those products in addition to an accounting.

by the court."). "An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of the infringement and the date of the judgment." *General Motors*, 461 U.S. at 655-56. When setting pre-judgment interest, the Court may choose from at least three rates: the rate at which the plaintiff actually borrowed, the prime rate, or the rate at which the U.S. government borrows (the T-bill rate). The Court should award Viasat pre-judgment interest at its actual borrowing rate, 6.49%. *See* Ex. A at Ex. 2, Mody Schedule. This fairly compensates Viasat for the borrowing it engaged in during the infringement period. As an alternative, the Court should adopt the prime rate, which averaged 5.48% during this period and better compensates Viasat for its actual cost of capital compared to the T-bill rate of 2.26%. *Id.*

### 1. The Court Should Award Viasat Pre-Judgment Interest

The Patent Act authorizes pre-judgment interest as part of making the patentee whole. 35 U.S.C. § 284. "The purpose of prejudgment interest is to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty rather than infringe." *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-CV-57-ADA, 2022 WL 1477728, at *1 (W.D. Tex. May 10, 2022) (citation omitted). "The award of pre-judgment interest is the rule, not the exception." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (cleaned up). Here, Kioxia used Viasat's patent without a license, and Viasat missed out on the timely payment of royalties it deserved. Ex. A at ¶ 9, Mody Decl. (describing how Kioxia deprived Viasat of financial benefits "that it could have used to its commercial advantage"). The Court should award pre-judgment interest to compensate Viasat appropriately.

### 2. Viasat's Cost of Borrowing Warrants Awarding Pre-Judgment Interest at Its Actual Borrowing Rate

Pre-judgment interest "ensure[s] that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (cleaned up). In this matter, the Court must look at Viasat's actual borrowing behavior during the infringement period, as Viasat could have forgone borrowing if it had access to royalties during the infringement period. *See NCS Multistage*, 2023 WL 149071, at *3 ("Complete compensation for the defendant's infringement includes prejudgment interest awarded from the date of infringement to the date of judgment.").

The Court may choose from the T-bill rate, the prime rate, or Viasat's actual borrowing rate. *See Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540 (Fed. Cir. 1991). The T-bill rate is effectively the rate at which the United States government borrows money. Ex. A at ¶ 10, Mody Decl. Given the sterling creditworthiness of the federal government and its ability to levy taxes and print currency to repay its debts, the T-bill rate is often referred to as a "risk free" rate. *Id*. The prime rate is a "benchmark interest rate that commercial banks charge their most creditworthy corporate customers," which generally is three percentage points higher than the T-bill rate. *Id.* Defendants often argue for the T-bill rate as "the standard rate absent evidence that the patent holder is entitled to a better rate." *See VLSI Tech.*, 2022 WL 1477728, at *2 (citing *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 132-133, 136 (D.N.J. 2007)). But, given that the Patent Act requires "complete compensation," the Court should award pre-judgment interest at Viasat's actual borrowing rate.

To assess Viasat's actual borrowing rate, Dr. Nisha Mody, Viasat's damages expert, analyzed Viasat's annual and quarterly financial statements filed with the Securities and Exchange

Commission. Ex. A at ¶ 13, Mody Decl. These are known as 10-K and 10-Q filings, respectively. *Id.* Viasat is an active commercial enterprise, providing communication services and defense technologies. Unlike many of the non-practicing entities involved in patent litigation, Viasat makes significant capital investments, provides healthcare and wages to its employees, and otherwise funds business operations.[5] To pay these expenses, Viasat turns to borrowing facilities, much like other active enterprises. *See* Ex. A at ¶¶ 14-16, Mody Decl. Using these filings, Dr. Mody "assemble[d] the history of [Viasat's] corporate borrowing during the damages period and calculated the quarterly weighted average interest rate reported of Viasat's entire credit stack." *Id.* at ¶ 13; *id.* at Ex. 3. As her analysis showed, "Viasat's borrowing rate has historically exceeded the 90-day Treasury rate and the prime rate with few exceptions." *Id.* at ¶ 14. For those periods where the prime rate exceeded Viasat's actual borrowing rate, Dr. Mody found that was because Viasat's long-term debt was issued at borrowing rates preceding the dramatic increase in rates in 2022. *Id.* As the pre-2022 debt retired, Viasat's borrowing rate stabilized again above the prime rate. *Id.* Viasat's actual borrowing rate therefore provides appropriate compensation. "Where a patent holder can show evidence of . . . the actual borrowing rate it would have avoided, courts have used that rate as the prejudgment interest rate." *Mars, Inc.*, 513 F. Supp. 2d at 133. The three alternatives are set out below:

| | **Average interest rate** | **Pre-judgment interest (total)** |
|---|---|---|
| Actual borrowing rate | 6.49% | [redacted] |
| Prime rate | 5.48% | [redacted] |
| T-bill rate | 2.26% | [redacted] |

*See* Ex. A at Ex. 1.1 (actual borrowing rate), 1.2 (prime rate), 1.3 (T-bill rate), Ex. 2 (average interest rates), Mody Schedules. If Kioxia had made royalty payments to Viasat for use of the '700

[5] For example, Viasat spent $164 million on independent research and development in its fiscal year ending March 31, 2026. Ex. D at 11, Viasat, Inc. Form 10-K (2026).

patent, Viasat could have used that money instead of turning to its borrowing facilities and incurring interest charges at its actual rate. As a result, the Court should award Viasat interest at its actual borrowing rate because that rate, not the prime or T-bill rate, would "place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty rather than infringe." *VLSI Tech.*, 2022 WL 1477728, at *1.

Viasat will be undercompensated at either the prime or T-bill rate because its borrowing costs exceeded both. Such an award would contradict the Patent Act, which provides that the Court "shall award" a prevailing plaintiff "damages adequate to compensate for the infringement." *See Bio-Rad Laboratories*, 807 F.2d at 967 (vacating award of pre-judgment interest below the prime rate when "evidence in the record relating to the appropriate rate of interest suggests the [Court should] use of either the prime rate or the rate that Bio-Rad paid on its corporate borrowings during the period of infringement."). At the prime rate, the total pre-judgment interest undercompensates Viasat by more than 10% relative to the interest accrued at its actual borrowing rate. If the Court were to award pre-judgment interest at the T-bill rate, it would deprive Viasat by about 60%—the difference in pre-judgment interest between Viasat's actual borrowing rate and the rate at which the U.S. government borrows money.

**3. In the Alternative, Viasat Seeks the Prime Rate**

In the alternative, Viasat requests that the Court award pre-judgment interest at the prime rate. When compared with the T-bill rate, the prime rate effectively compensates Viasat for Kioxia's infringement: it compensates Viasat at about 88% of the interest associated with Viasat's actual borrowing, whereas the T-bill rate only compensates Viasat for 41% of its actual borrowing costs. Moreover, courts regularly rely upon the prime rate to set the rate of pre-judgment interest. *Uniroyal,* 939 F.2d at 1545; *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983); *NCS Multistage*, 2023 WL 149071, at *3; *Erfindergemeinschaft UroPep GbR v. Eli Lilly*

*& Co.*, No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *8 (E.D. Tex. May 18, 2017); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00210-JRG, 2018 WL 1156284, at *9 (E.D. Tex. Mar. 5, 2018); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72-DF, 2010 WL 5140718, at *6 (E.D. Tex. Sept. 27, 2010).

For these reasons, Viasat respectfully requests that the Court award it pre-judgment interest totaling [redacted], representing its actual borrowing rate. In the alternative, Viasat asks that the Court award it pre-judgment interest at the prime rate in the amount of [redacted].

### D. The Court Should Award Post-Judgment Interest

The award of post-judgment interest on a district court judgment is mandatory. *See Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). Under 28 U.S.C. § 1961(a), a prevailing party shall recover post-judgment interest at the rate set by statute, compounded annually from the date of the judgment through the date of payment. *See, e.g.*, *VLSI Tech.*, 2022 WL 1477728, at *4. Interest accrues on the damages awarded by the jury, and it also accrues on the pre-judgment interest, supplemental damages, and costs. *See Ravgen*, 2025 WL 284643, at *3 (awarding plaintiff "post-judgment interest on the entire judgment amount, including the supplemental damages award, prejudgment interest, and costs, at the Federal statutory rate computed daily and compounded annually"); *Jiaxing Super Lighting Elec. Appliance Co.*, 2023 WL 2415281, at *21. "The amount awarded for post-judgment interest shall be determined after [the defendant] provides its accounting and satisfies the judgment in its entirety." *NCS Multistage*, 2023 WL 149071, at *4. Viasat therefore asks that the Court order Kioxia to pay post-judgment interest to be calculated once the Court sets the total amount of pre-judgment interest, supplemental damages, and costs and Kioxia satisfies that judgment in its entirety.

## III. Conclusion

For the foregoing reasons, Viasat requests that the Court amend the Final Judgment to include supplemental damages, an ongoing royalty, pre-judgment interest, and post-judgment interest.

August 28, 2026

Respectfully submitted,

/s/ James Travis Underwood
James Travis Underwood, State Bar No. 24102587
GILLAM & SMITH, LLP
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
travis@gillamsmithlaw.com

J. Scott McBride (*Pro Hac Vice*)
Matthew R. Ford (*Pro Hac Vice*)
Nevin M. Gewertz (*Pro Hac Vice*)
Meg E. Fasulo (*Pro Hac Vice*)
Mac LeBuhn (*Pro Hac Vice*)
Jordan G. Golds (*Pro Hac Vice*)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
scott.mcbride@bartlitbeck.com
matthew.ford@bartlitbeck.com
nevin.gewertz@bartlitbeck.com
meg.fasulo@bartlitbeck.com
mac.lebuhn@bartlitbeck.com
jordan.golds@bartlitbeck.com

Nosson D. Knobloch (*Pro Hac Vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
nosson.knobloch@bartlitbeck.com

*Counsel for Plaintiff Viasat, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been sent to all counsel of record via electronic mail on August 28, 2026.

/s/ James Travis Underwood

**CERTIFICATE OF COMPLIANCE WITH FED. R. CIV. P. 37**
**REQUIRING PRE-MOTION CONFERENCE**

Pursuant to Fed. R. Civ. P. 37(a)(1), I, James Travis Underwood, counsel for the moving party, hereby certify that on August 27, 2026, counsel for Viasat conferred with counsel for Defendants Kioxia Corporation and Kioxia America, Inc., in a good faith effort to resolve the issues raised by Plaintiff Viasat's motion to amend the judgment to include supplemental damages, an ongoing royalty, pre-judgment interest, and post-judgment interest. Counsel for Kioxia indicated that Kioxia opposes the relief requested.

/s/ James Travis Underwood